# Bellas *against* Lloyd.

A vendee having received a deed for the one undivided half of a church and lot, " together with all and singular the rights, liberties, &c. in as full and ample a manner, and with all the same rights and conditions, authorities and agreements, with which the vendor now holds the said premises, as regards all or any assemblies for divine worship," subsequently purchased from the same vendor the other moiety : and in an action of covenant to recover the purchase money, in which the vendee set up a defect of title, it was held that the first deed was a legal notice of a subsisting right in an " assembly for divine worship," and not a fact to submit to the jury, whether there was notice or not.

In an action of covenant by a vendor against a vendee to enforce a specific execution of a contract for the sale of an undivided moiety of a church and lot, when it was an important inquiry whether the defendant was in the adverse possession of the property or not, it is error in the court to permit the defendant to read and file a paper, made by himself, at the trial, disclaiming to hold the the property adversely.

ERROR to *Northumberland* county.

This was an action of covenant by Hugh Bellas against William A. Lloyd.

On the 1st of November 1823, Hugh Bellas was the purchaser of a church and lot at sheriff's sale, and on that day he executed an

[Bellas v. Lloyd.]

agreement vesting certain privileges and benefits in certain denominations of Christians, in the said church and lot. On the 25th of August 1824, he conveyed by deed to William A. Lloyd the undivided half of the lot and church, " together with all and singular the rights, liberties, privileges, hereditaments and appurtenances thereunto belonging, in as full and ample a manner, and with all the same rights and conditions, authorities and agreements, with which the said Hugh Bellas, and Esther his wife, now hold the said premises as regards all or any assemblies for divine worship." On the 20th of July 1833 Bellas entered into an agreement with Lloyd to sell him all his interest in the other moiety in consideration of 500 dollars, and to convey within ten days. The deed was executed and tendered, and this action brought on the agreement to enforce a compliance with its terms by Lloyd. The defendant set up as a defence, *inter alia*, that the property had been incumbered by the agreement of the 1st of November 1823, before mentioned, and another and subsequent agreement, of which he had no notice. The plaintiff contended that the deed of the 25th of August 1824, before mentioned, was legal notice to the defendant, when he entered into the agreement to purchase the second moiety, of the existence of that agreement. The court referred it to the jury as a matter of fact. A question arose on the trial whether the defendant was in the actual and adverse possession of the moiety, the price of which was the subject matter of this suit ; and evidence was given on this subject ; and in addition to which the defendant filed a written paper disclaiming to hold adversely, but as a tenant in common with the plaintiff.

The plaintiff below was the plaintiff in error, and assigned errors in the opinion of the court referring the question of notice to the jury as a matter of fact, and permitting the defendant to file the disclaimer of adverse possession.

*Merrill*, for plaintiff in error.
*Greenough*, for defendant in error.

The opinion of the Court was delivered by

SERGEANT, J.—The first error assigned is in the charge of the court, and their answer to the defendant's first and second points. The question is, whether the court were right in leaving it to the jury to determine as matter of fact, how far the defendant had notice of the agreement of the 1st of November 1823, and its indorsement, or whether they ought not to have instructed the jury as matter of law, that the defendant had such notice. By the deed of the 25th of August 1824, the plaintiff conveys to the defendant a moiety of the brick church and lot of ground, which had been conveyed to him by the sheriff of Northumberland county on the 26th of November 1823, together with all and singular the rights, liberties, privileges, hereditaments and appurtenances, in as full and ample a manner and with all the same rights and conditions, authorities and agreements, with

which the said Hugh Bellas, and Esther his wife, now hold the said premises, as regards all or any assemblies for divine worship. I think there can be no doubt that under this clause the defendant takes the property subject to every agreement then subsisting on the part of the plaintiff, for the use of the church by assemblies for divine worship. Indeed I can perceive no other object in the clause than to affect the defendant with notice of the existence of such agreements; and it must now be considered that they were seen by him, or if not there was sufficient to put him on inquiry, and his not seeing them was the result of his own neglect. But still the question remains whether the agreement and its indorsement were in existence on the 25th of August 1824, when the deed was executed. That the agreement of the 1st of November was, I believe is not disputed; indeed it could not be, without alleging that it had been ante-dated, which is not pretended. Of this agreement, therefore, the deed is positive and full notice. But, as to the indorsement, which is without date, and materially enlarges the agreement, the case is different. It is true the deed refers to agreements, in the plural, and the evidence on the face of this indorsement is, that it was made prior to the sheriff's deed of the 26th of November 1823, for it contains a promise on the part of the plaintiff to do certain things when his title should be confirmed, and the sheriff's deed made to him. But still it is a point which cannot be conclusively settled by the written documents alone; there is other evidence in relation to it, however slight it may be considered. The rule is well settled, that although the construction of deeds, records and written documents belongs to the court, and they are bound to instruct the jury on their operation as matter of law, yet if there be any ambiguity, or doubt depending on parol evidence for its solution, the jury must decide it. I am therefore of opinion that the court ought to have instructed the jury that this agreement of the 1st of November 1823, being in existence before the execution of the deed of the 25th of August 1824, the deed was in point of law full and direct notice to the defendant of the contents of that agreement; that the same rule applied to the indorsement if it was made before the execution of the deed; and, whether it was or not, was a point for the consideration of the jury.

The second and third errors assigned are in the instructions of the the court, " that the action of covenant is for damages and not for a specific execution of the contract, and if the plaintiff is entitled to any thing it will be to damages; that if possession had been taken under the contract, and is still held, nothing short of the purchase money agreed upon would do justice; if adverse possession had been taken before the execution of the covenant, and is still held, justice would seem to require the same measure of damages; but if the defendant only took possession as a co-tenant of the property, the jury may take into view the paper he has read and filed, disclaiming to hold adversely, and acknowledging the equal right of the plaintiff."

Taking the whole of this part of the charge together, the princi-

ples stated seem to be substantially those laid down by this court in the case of Huber *v.* Burke, 11 *Serg. & Rawle* 244, to which I refer. The court stated the law as favourably to the plaintiff as could fairly be done, and we think the charge in this respect correct.

But the latter part of the instruction, relative to the paper read and filed by the defendant, requires a more particular examination. In this action of covenant, the plaintiff, agreeably to the doctrine of Huber *v.* Burke, sought a specific execution of the contract, by a recovery of the purchase money, on the ground that the defendant had taken possession of the property contracted for. The defendant contended, that he had not taken possession either under the contract or adversely, but as tenant in common in right of himself and the plaintiff; and it was a question of fact on the evidence given, in what character the defendant took possession. If the evidence established that the defendant had taken possession merely as co-tenant, his case was made out so far as respected the plaintiff's claim for the purchase money, and the paper in this respect could have no operation whatever. Could it have any effect on the amount of damages for breach of contract short of the whole purchase money? The defendant's disclaimer of adverse possession and recognition of the plaintiff's title to a moiety, conferred no benefit on the plaintiff: it neither added new strength to his title, nor diminished the loss he may have sustained by this breach of contract. If the plaintiff failed in compelling payment of the purchase money, and enforcing a specific execution, on the ground that the defendant had not taken possession as alleged by the plaintiff, the verdict itself would be conclusive evidence that the title remained *in statu quo,* and that the plaintiff could dispose of his interest to another purchaser. It would seem that though disguised under the appearance of doing justice to the plaintiff's title, the permission to file this paper was in effect allowing the defendant to qualify his own acts, and to make evidence for himself. It was calculated to bias the minds of the jury and divert them from the evidence. The permission to a party to file papers during a trial, affecting the event of the matters in issue, may lead to great irregularities and abuse. It may enable him to vary the position of the cause by an act of his own, possessing no defined character, involving no legal responsibility, and taking the opposite party by surprise. It tends to embarrass the regular course of trial. It is the duty of the court to discountenance a practice of this kind, and it is error for which the judgment will be reversed, if exception is taken to it at the time of being offered, or when sanctioned by the charge of the court.

The defendant's fourth point, "that if the jury believed the defendant did not get what he expected to get when he entered into this agreement, then no damages could be recovered," was answered by the court in the affirmative, without sufficient attention to its language. It need hardly be said, that the mere expectation of one

party, unknown to the other, and without just foundation, forms no standard for adjusting the rights arising from contract.

Judgment reversed, and *venire facias de novo* awarded.