# Hart's Estate (No. 4).

*Decedent's estates—Trusts and trustees.*

Where in order to protect an estate owning stock in a corporation, it is necessary for the estate to buy antagonistic stock, and the parties in interest agree that the executors shall borrow the money to purchase the stock, and that a designated proportion of the dividends on the stock shall be applied to the reduction of the loan, the advance of income is merely a temporary loan to principal, and must be reimbursed to income.

*Trust and trustees—Commissions—Misconduct—Refusal of commissions.*

A trustee will be disallowed all commissions where it appears that the trustee, a lawyer, was a testamentary trustee under his father's will for the testator's children and grandchildren; that he did not file an account for fifteen years and then only under compulsion; that when filed it was improperly stated, imposed great labor, and exhaustive examination upon the parties and the court, included both principal, income and distribution, claimed commissions wrongfully and upon a debt of his own which had never been paid by him, although less than the amount of commissions which he had paid himself; that although he sold many of the investments made by the testator, he had retained others until they had become practically worthless; that he paid assessments out of the principal of the estate upon shares of stock and bonds not recognized as invest-

ments proper to be held by an executor, and which should have been sold by him; that he made investments of moneys of the estate in railroads, iron companies, brick company and a country club bonds and stock; that he paid himself in excess of his share of the estate without award by the court, and unknown to the legatees, and retained shares of stock at less than their market value; that in the income account he charged himself with interest and dividends received on the investments he had appropriated to himself as a share of the personal estate as belonging to the estate and the distribution to him had not been made, deducted commissions upon the whole amount as if it had actually been paid to him, and then made distribution to the cestuis que trust and himself as if an actual cash balance for distribution.

Argued March 26, 1902. Appeals, Nos. 393, 398, 399 and 400, Jan. T., 1901, by Julia C. Burton, Samuel Hart Chase, Clarissa S. Chase and Mabel B. Chase, from decree of O. C. Phila. Co., Oct. T., 1898, No. 552, on exceptions to adjudication in estate of Samuel Hart, deceased. Before McCollum, C. J., Dean, Fell, Brown and Mestrezat, JJ. Reversed in part.

Exceptions to adjudication.

At the adjudication it appeared that the estate held 1,366 shares of the stock of the New York Consolidated Card Company. It appeared that it was important that this company should enter into a combination with certain other companies. Some of the stockholders refused to go into the arrangement, and the parties interested in the estate agreed that the estate should purchase the antagonistic stock. With this end in view the following agreement was entered into:

"PHILADELPHIA, PA., October 29th, 1894.

"We the undersigned being the heirs of full age entitled under the will of Samuel Hart, deceased, do hereby authorize and consent that Charles Henry Hart, executor and trustee under said will, shall sell and transfer unto Frederick Chase eight hundred (800) shares of the capital stock of the New York Consolidated Card Company for the purpose of the said Frederick Chase using the same as collateral security for a loan of ten thousand dollars ($10,000) to be made by Solomon L. Cohen and the estates of John M. Lawrence and Isaac Levy, for the benefit of the estate of Samuel Hart; the said ten thousand dollars to be applied by the said Charles Henry Hart, exec-

utor, etc., toward the purchase of the interest of John J. Levy in said New York Consolidated Card Company. We further authorize and agree that one half of the dividends upon the said eight hundred shares of stock of the New York Consolidated Card Company or the stock of the United States Playing Card Company of New Jersey into which the first named stock is to be converted (which we hereby authorize to be done) shall be applied to the reduction of said loan of ten thousand dollars. In witness whereof we have hereunto set our hands and affixed our seals the day and year first above written.

" In presence of   CHAS. HENRY HART.
" AUGUSTUS A. LEVY.   SARA J. HART.
      " REBECCA C. HART.
      " CLARISSA S. CHASE.
      " FREDERICK CHASE.
      " JULIA CHASE BURTON.
      " CLARISSA TOWNLEY CHASE.
      " SAMUEL HART CHASE.
      " MABEL BERTHA CHASE."

The orphans' court in an opinion by HANNA, P. J., found on the subject as follows:

Exceptions were also filed by the accountant as administrator of his deceased sister. As far as we can learn from the account and testimony the testator in his lifetime was the owner of $17,100 bonds of the New York Card Company, valued at $17,100, and 1,366 shares of New York Card Company stock, valued at $37,575. The executors subsequently sold 160 shares of the stock of said company at a profit of $5,600, and now holds 1,874 shares received in exchange for 1,206 of said company and $17,100 in bonds of the same corporation above mentioned. This transaction was the result of a consolidation of the company named with another corporation in the same business. To protect the interest of the estate it became necessary for the executor to obtain $20,000. One half of this sum was realized from the sale of 160 shares of stock and the remaining $10,000 were secured upon a loan. To repay this loan all the parties interested agreed that the sum of $7,750 should be appropriated out of the income of the estate and the balance of $2,250 be taken from the principal. In other words, income loaned

principal, $7,750. The natural inference is the cestuis que trust or those entitled to the income should be reimbursed their loan out of the principal. This return was made to the income and deducted from the principal. The auditing judge, however, concludes it was improper, and the parties, when they relinquished their share of the income, made an absolute gift to the estate, and they are therefore not entitled to be reimbursed. The agreement of the parties is merely this: " We hereby authorize and agree that one half of the dividend upon said eight hundred shares . . . . into which the said first-named stock is to be converted, which we hereby authorize to be done, shall be applied to the reduction of said loan of $10,000." This is merely an authority to the executor to use such proportion of their income for the purpose indicated, and is silent as to whether it was an absolute gift to the principal of the estate or a loan to save a greater loss. The presumption, even in view of this fact, we think, is that the advance of income was merely a temporary loan. If more was intended by the parties, they and the executor would have been more explicit; and their subsequent conduct confirms this view. In this respect we must differ from the finding of the auditing judge and sustain the first and fifth exceptions.

The facts as to the allowance of commissions to the accountant appear by the opinion of the Supreme Court.

*Errors assigned* were in sustaining the exceptions relating to the borrowing of money for the purchase of the card company's stock; and in dismissing exceptions to the allowance of any commissions to accountant.

*James Alyward Develin* and *Alexander Simpson, Jr.*, for appellant, cited as to the allowance of commissions: Keenan's Estate, 6 Kulp, 73; Holman's App., 24 Pa. 174; Richardson's Estate, 12 W. N. C. 386; Drake's Estate, 2 Kulp, 256; Hemphill's App., 18 Pa. 303; Worrell's App., 23 Pa. 44.

*Frank P. Prichard* and *John G. Johnson*, for appellee.

OPINION BY MR. JUSTICE DEAN, October 13, 1902:

A statement of the facts preceding and connected with the account of Charles Henry Hart, executor and trustee of his

father, Samuel Hart, deceased, is given in the appeal of Charles Henry Hart, from same degree, opinion on which is handed down this day. As to these appeals, that of Julia C. Burton and others, we are of opinion that the court below properly held, that when the heirs agreed to the purchase of the antagonistic stock and that one half of the purchase money should be realized by a loan to be made by the executor and that further, when they consented, that $7,750 of this loan should be repaid out of the income and $2,250 out of the principal of the estate, it was understood that the advance of income was merely a temporary loan and not, as the auditing judge held, a gift not to be repaid. We think this is a correct interpretation of the written agreement of October 29, 1894. The first assignment of error is therefore overruled.

As to the second assignment, that the court erred in allowing the executor and trustee the commissions, it is well founded. The court below narrates the facts exhibiting the conduct of the executor thus:

" What are the facts in the present case? No account was filed by the executor for fifteen years, and then under compulsion, and when filed is improperly stated, and imposes great labor and exhaustive examination upon parties interested and the court, and includes both principal and income and distribution in one so-called account, claims commissions wrongfully, and even upon a debt of his own which has never been paid by him, although less than the amount of commissions which he has paid himself. And although he sold many of the investments made by the testator at a profit, but at what date does not appear in the account, he has retained others until the present time, when they are practically worthless, and paid assessments out of the principal of the estate upon shares of stock and bonds not recognized as investments proper to be held by an executor, and which should have been sold by him; made investments of moneys of the estate in railroad, iron company and brick company, country club and card campany bonds and stock, all illegal investments; paid himself in excess of his share of the estate, without award by the court, and unknown to legatees and cestuis que trust, and retained shares of stock at less than their market value, and in addition in the income account charged himself with interest and div-

idends received on the investments he had appropriated to himself as a share of the personal estate as belonging to the estate and the distribution to him had not been made, deducted commissions upon the whole amount as if it had actually been paid to him, and then made distribution to the cestuis que trust and himself as if an actual cash balance for distribution. And still more inexplicable, the income account from July, 1897, to May, 1900, both inclusive, instead of claiming credit for the distribution of his share to himself, has this remarkable entry, viz: 'Credit to C. H. Hart.'"

If this does not point to reckless and blamable mismanagement on the part of a trustee, we are at loss to conceive what language could more pointedly pronounce him guilty of such a charge; and yet the result is only this mild conclusion on the part of the court below:

"This is another illustration of the mismanagement and want of good care exhibited in the control and management of the estate, and, taken in connection with his irregular and almost incomprehensible account, we regret to reach the conclusion that the executor does not merit the full reward granted to a prudent, careful and meritorious trustee. Enough has been shown to warrant the disallowance of all compensation, but we are disposed to be more lenient. The rate allowed by the auditing judge is adopted, but the amount to be awarded to the executor as compensation cannot be ascertained except upon a restatement of the account, showing disallowance of commissions upon the several items before referred to, together with the income, so-called, upon the securities appropriated by the executor as his distributive share."

Taking the facts as the court states them, and as the evidence developed them, it may well say, "Enough has been shown to warrant the disallowance of all compensation;" in fact it warranted no other than a disallowance of all compensation. The personal regret for the trustee's conduct should not have moved the court to shrink from the judicial decree which logically followed the finding of facts,—one refusing him all compensation. In the real sense of the word, it is not the infliction of a "penalty," for there is another court better adapted both in its procedure and judgment to that end; in the orphans' court, it is simply a refusal to reward him as for doing well

that which he has done ill. That he did not intentionally wrong his cestuis que trust is immaterial on the question of compensation; if they have suffered by his neglect and mismanagement, he has no claim in law or equity to be paid for that sort of management. In running over more than a score of cases from Swartswalter's Account, 4 Watts, 77, down, I have not found one that would warrant the ruling of the orphans' court on like facts. In two cases, Holman's Appeals, 24 Pa. 174, and Norris's Appeal, 71 Pa. 106, the trustees were far less negligent and blamable than in this case; in both they were refused commissions. In the first case, Holman's Appeal, the court went further, and refused all allowance of counsel fees. In the last case the court says : " Where there is no evidence of a proper attention to the duties of a trust, where no account has been settled for thirty years and then only when a settlement was compelled by law, and where a very unfair exhibit was made when the account was presented, no compensation ought to be allowed to the executrix. Nor would it be just to charge the remaindermen with the fees paid to professional gentlemen to dispute their rights and to advance the interests of the accountant."

That the accountant was not compelled by citation to render accounts for fifteen years after he took out letters, in no way excuses him or indicates assent to his methods. The beneficiaries under the will were the children, grandchildren and other near relatives of the testator; the accountant was his son, by profession a lawyer; it was natural that they should repose confidence in him, and for many years accept his assertions of faithfulness to their interest; besides, their affection for him and aversion to publicity would in large measure account for a silence which resulted to their prejudice. Therefore, the decree of the court below, so far as it allows compensation to the executor and trustee, is reversed and it is directed that the account be restated accordingly.