Estate of Catherine O'Brien, Deceased.

Argued April 28, 1931.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Drew, JJ.

*T. S. Brown,* and with him *Rex H. Lindley,* for appellant.—A conditional or qualified promise to pay without more will not toll the statute: Hartranft's Estate, 153 Pa. 530; Miller v. Baschore, 83 Pa. 356; Linderman v. Pomeroy, 142 Pa. 168.

*John C. Bane, Jr.,* of *Reed, Smith, Shaw and Mc-Clay,* and with him *M. D. Wedner,* for appellee, cited: Hazlett v. Stillwagen, 23 Pa. Superior Ct. 114; Woods v. Irwin, 141 Pa. 278; Palmer v. Gillespie, 95 Pa. 340.

OPINION BY CUNNINGHAM, J., July 8, 1931:

By this appeal Mary White, one of the six daughters of Catherine O'Brien, deceased, alleges that, in the distribution of their mother's estate, the court below, sitting in banc, erred in awarding to her sister, Myrtle Esther O'Brien (now Eurich), the sum of $1,000 with interest. thereon for more than eighteen years (a total of $2,096.33), instead of only $500 with interest for six years, as awarded by the auditing judge.

Catherine O'Brien, a widow, died testate, February 2, 1929, survived by seven children. For a number of years she and her daughter, Myrtle Esther, had lived in Pittsburgh in a house owned by the mother. After giving legacies to her daughter, Myrtle Esther, and a niece, Mary Printer, in language hereinafter quoted, she divided, by her will dated January 23, 1917, the remainder of her estate equally between her children, including Myrtle Esther, and appointed her executrix. The second and third paragraphs of her will read:

"Second: I will bequeath and give to my dearly beloved daughter, Myrtle Esther O'Brien the sum of ($500) five hundred dollars to reimburse her for loan to me.

"Third: I will bequeath and give to my dearly beloved niece Mary Printer the sum of one thousand ($1,000) dollars. She having assisted me in every way during my lifetime. And if she should die before she came in possession of same the said one thousand ($1,000) dollars to go to my daughter Myrtle Esther O'Brien."

At the audit, Myrtle Esther contended, through her counsel, that her "loan" to her mother had been made on March 12, 1912, to assist in paying for the home and that the amount thereof was $1,000. A formal claim for this amount, with interest from March 12, 1912, to the date of distribution, June 20, 1930, was

presented with the statement by counsel that the legacy of $500 was not claimed in addition; thereto but should be treated as a "satisfaction pro tanto of the debt." Competent evidence in support of the claim was admitted and the questions involved upon this appeal are, in the language of counsel for appellant, whether it was sufficient (a) "to establish the validity of the appellee's claim" and (b) "to toll the bar of the statute of limitations." We have no difficulty with respect to question (a). There was sufficient competent evidence to support this finding of the court below: "On March 12, 1912, claimant, by her own check, paid to the Clifton B. & L. Association the sum of $1,000 and obtained a receipt which showed that the money was 'on account of loan returned book No. 88 of Mrs. C. O'Brien.' "

Nor can there be any serious doubt that the evidence was sufficient to justify the conclusion that appellee's right of action, lost by reason of the passage of six years, had been revived by such a clear, unequivocal and unconditional acknowledgement by the mother of the existence of the debt, made within six years of her death, as amounted to an implied, if not an express, promise to pay, at least the principal, when the property was sold. It was sold by order of court for the payment of debts and legacies and the fund for distribution was largely made up of its proceeds. Anna Weyman, a neighbor of the O'Briens for many years, testified she met the mother and daughter on the street in April, 1927, at which time the witness was desirous of buying a property; that Mrs. O'Brien offered to sell her home and that the following statements were made: "Mrs. O'Brien said, 'Are you going to consider my piece of property?' I said I had one piece of property. Myrtle said 'I wish you would buy it, for I would get my money back.' Mrs. O'Brien said, 'You'll get your thousand dollars when I sell my home.'

That is all that was said.'' On cross examination the witness added that Mrs. O'Brien said, ''You can't have your money before I sell my property.'' There was testimony by other neighbors relative to similar declarations by the mother but the dates upon which they were made were not satisfactorily fixed. It is contended on behalf of appellant that the testimony showed, at best, merely ''a conditional promise to pay when she should sell her house.'' Under the authorities, many of which are reviewed in Hazlett v. Stillwagen, 23 Pa. Superior Ct. 114, and Maniatakis' Estate, 258 Pa. 11, the time of payment need not be immediate but the intention to pay must be present. We think the testimony warrants the inference that decedent had a present intention to pay the acknowledged debt as soon as the house could be sold and that the reference to that source of funds was a limitation upon the time rather than a condition of making the payment: Mosser Co. v. Cherry River Co., 290 Pa. 67. It is perfectly clear that the mother intended by her will to make special provisions for Myrtle Esther and it is difficult to understand, in the light of her subsequent declarations, why she said in the second paragraph that the $500 legacy was to ''reimburse'' her daughter for her ''loan.'' The fact that testatrix made her mark in executing her will would indicate that she was illiterate and might not have understood the full significance of the word ''reimburse.'' In any event, as pointed out below, the statement in the will is, as against appellee, nothing more than a self-serving declaration of her debtor. Her statements, acknowledgements and promises made ten years later furnish a sufficient basis for the decree of the Court as to the principal sum of $1,000. It does not follow, however, that interest for eighteen years should also have been awarded. We are not convinced that that part of the decree should be affirmed. Precedents based upon notes expressly pro-

viding for the payment of a specified rate of interest, such as Neale's Estate, 14 Pa. Dist. Repts. 227, are of little assistance. Our case of Humphrey's Sons, Inc., v. Higgins, 100 Pa. Superior Ct. 470, cited in behalf of appellee, turned upon a contention that interest should not be allowed in that case by reason of an alleged tender which we held insufficient to prevent its accrual. In Fritz' Estate, 19 Phila. Repts. 95, the evidence in behalf of the claimant showed that the work for the performance of which his claim was presented had been done nearly twelve years prior to the death of the decedent who had continually promised to pay claimant, appointed times for payment, postponed the settlement and finally promised to pay the bill a few weeks before his death. Under these circumstances it was held that the bar of the statute could not be interposed and that, as decedent admitted the debt and repeatedly promised to pay, it would be presumed he must have known he would be liable for the penalty of non-payment and that claimant was not bound to notify decedent he claimed interest. In Graham v. Keys, 29 Pa. 189, suit was brought to recover money loaned in October, 1844. In January, 1853, the defendant admitted that he owed the money and said he would pay the principal but would pay no interest. In considering the effect of this admission the Supreme Court said (p. 191): "The admission of the indebtedness, and the offer to pay, were unconditional so far as regards the principal sum, and to this extent the plaintiff had an undoubted right to recover. But the error into which the court below fell was in allowing the plaintiff to recover interest from the time of the admission. The recovery must be controlled by the admission, and that was limited altogether to the amount of the money loaned in 1844. By refusing to take the money as a complete discharge of the debt, the plaintiff did not lose the

benefit of the admission; but neither could he by delay in bringing suit to enforce his rights, enlarge the admission so as to include the subsequent accrued interest. When, however, the suit was brought, the defendant, instead of offering to pay, or tendering a payment for the principal, denied that he was legally liable for either principal or interest; for the delay from the time of the commencement of the suit, which was on the 15th December, 1854, to the day of the trial, 17th March, 1857, the defendant is accountable, and is therefore fully chargeable with interest during that time." None of the cases cited on either side is directly applicable. We think this case must be disposed of upon its particular facts (and the inferences fairly deducible therefrom) and upon the general principle that where there is no express agreement relative to the payment of interest, but the debt is payable on a fixed date, or upon the happening of a designated event, interest will run from that date or the occurrence of the event. In the absence of an undertaking to the contrary, interest begins to run from the time when the debt should have been paid: 3 R. C. L., p. 899, secs. 85, 86; 15 ibid., p. 26, sec. 24.

There is no evidence here that the mother ever agreed to pay interest; nor can any inference to that effect be drawn from the testimony. As the daughter was living with her mother when the loan was made and continued to enjoy with her the home paid for, in part, with that money, the inference would be the other way. The promise of the mother to the daughter was: "You'll get your thousand dollars when I sell my home. You can't have your money before I sell my property." Clearly, the undertaking was to pay at a future time—when the home was sold; the mother would not be in default until that event occurred and the daughter would not be entitled to interest prior to such default.

Under all the circumstances here present, we think the death of the mother on February 2, 1929, should be treated as the legal equivalent of a sale of the home; all her property then passed into the jurisdiction of the orphans' court for administration and the sale of the home became an incident of that administration.

That portion of the decree which awards to appellee interest on $1,000. "from March 12, 1912, to June 20, 1930," should be modified to read "from February 2, 1929, to June 20, 1930," and the respective distributive shares awarded the seven children of decedent by the schedule of distribution increased accordingly.

As so modified the decree is affirmed at the costs of the estate.