Bee, Inc. *v.* Pizor, Appellant.

Argued March 14, 1935.

Before KELLER, P. J., CUN-
NINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and
RHODES, JJ.

*Calvin F. Smith,* and with him *Francis H. S. Ede,* for appellant.

*Dallas Dillinger, Jr.,* with him *Francis E. Walter* and *Carleton T. Woodring,* for appellee.

OPINION BY KELLER, P. J., April 22, 1935:

This was an action in assumpsit by the plaintiff, formerly Bee Automobile Co., to recover from the defendant, who conducts a number of moving picture theatres, the purchase price of certain motion picture equipment. It was made up of two claims. One, for $29.33, for two Samson transformers, was not disputed. The other, for $1,600, for a complete theatre *talking* picture equipment, was contested by the defendant. We shall confine our discussion to this disputed claim.

In its amended statement of claim the plaintiff averred that it was, on or about February 4, 1929, the distributor for the district in which the Borough of Nazareth, Pennsylvania, is located, of the goods manufactured, handled and sold by the Amplion Corporation of America; that L. P. Clark was on said 4th day of February, 1929, general sales representative of said Amplion Corporation for a larger territory embracing the district above mentioned; that on or about February 4, 1929 the defendant by his manager and representative, George C. Meeser, entered into an oral contract with the plaintiff, through its representative, Byron H. Eckert, and said L. P. Clark, for the purchase of one complete theatre talking picture equipment,—giving items—, and agreed to pay therefor the sum of $1,600 on delivery of said equipment; that on February 8, 1929 plaintiff caused to be

shipped and delivered to defendant, by express, part of said equipment; that on February 12, 1929, plaintiff caused to be shipped and delivered to defendant by express, certain amplifiers, likewise forming part of said equipment; and on August 23, 1929, it caused to be shipped and delivered to said defendant the synchronous turntables, pickups and fader, which, everybody admitted, were necessary for a talking picture equipment, as distinguished from a silent motion picture equipment; and that defendant installed and retained said equipment, but refused to pay for the same.

The defense, in substance, consisted of a denial that defendant had any dealings with plaintiff relative to the purchase of said talking picture equipment, or had bought, ordered or received the same from the plaintiff; and a denial that George C. Meeser had any authority from the defendant to order or purchase such equipment for him, or that he had done so. Defendant contended, on the contrary, that he had, personally, ordered the talking picture equipment of Clark, on January 25, 1929, on condition that it was delivered within ten days and worked to the satisfaction of the defendant; that Clark, after conferring by telephone with the Amplion Corporation, stated that the complete equipment could be delivered within ten days, and pursuant thereto, defendant had confirmed the order by letter, dated February 1, 1929, expressly conditioned on its delivery within ten days; that Meeser, who was defendant's technical man, had been sent by him to New York at Clark's suggestion, to look at the equipment which Clark had contracted to sell him; and had no authority to buy any equipment; that the deliveries of February 8 and February 12 had been made by Amplion Corporation under defendant's contract with Clark; that after waiting until the end of March, 1929, for the delivery of the synchronous turn-

tables and pickups, which were necessary to complete the talking picture equipment, and which, plaintiff averred in its statement and proved (p. 56a) were shipped on August 23, 1929, he notified Clark that he rescinded the contract, removed such parts of the equipment as had been delivered and installed, and notified Clark that they were held awaiting his directions; and that on April 15, 1929 he installed a talking picture outfit furnished by the Pacent Corporation; that he did not know until July 1, 1929 that the plaintiff claimed to have been the seller of the apparatus.

In order to entitle the plaintiff to recover in this action, it had to prove by competent evidence: (1) That George C. Meeser, on or about February 4, 1929, purchased from the plaintiff for the defendant a complete talking picture equipment, as averred in the statement, and agreed that defendant would pay plaintiff $1,600 for it; and (2) that George C. Meeser had authority from the defendant to make the purchase on his behalf. In the issues, as raised by the pleadings, mere proof of the shipment and delivery of the equipment to the defendant would not be sufficient.

The plaintiff's evidence was most unsatisfactory as to the details of the alleged contract of purchase by Meeser; and was wholly wanting as to any authority in Meeser to make such a contract on behalf of the defendant.

The testimony of Clark, who was called as a witness for plaintiff, was to the effect that he had authority to sell Amplion goods in the Nazareth territory, but if he did so, the plaintiff would be entitled to a commission; that at his suggestion, the defendant sent Meeser, who was his technical man, to New York, to look at the equipment, for the sale of which, he admitted, he had been negotiating with the defendant.

He also admitted that defendant had inquired how soon the equipment could be delivered and that he had telephoned to the Amplion people in New York and had been told by them that it could be delivered "almost immediately;" that pursuant to this arrangement Meeser went to New York where he met Cornwall, the engineer of the Amplion Corporation—or of J. W. & W. L. Woolf, their American distributor and representative (who, he said, "were the Amplion people")—and Clark, and Eckert, who was a sales representative for the plaintiff corporation. Eckert testified, however, that, at that time, the plaintiff did not represent the Amplion Corporation in selling the *sound or talking equipment* (p. 37a). Meeser asked to see the synchronous turntables, which were absolutely necessary to make the equipment serve for talking pictures, but was not able to do so, because, he was informed that they were not yet assembled.

Eckert, the plaintiff's sales representative, did not testify clearly and positively that he had sold this talking picture equipment for the plaintiff to Meeser, as defendant's representative.

Attempt was made to overcome this deficiency by producing from the files of J. W. & W. L. Woolf, the general distributors in America for Amplion Corporation, *a sales slip of that firm,* (Plaintiff's Exhibit, No. 1) dated February 6, 1929, filled out by Cornwall, their engineer, but *not signed by anyone,* which contained in the line intended for the name of the purchaser, following the word, "sold", the words, "by Bee Automobile Co., 618 Linden Street, Allentown, Pa.,"—which was apparently an error for "Sold *to* Bee Automobile Co.,"—itemizing certain theatre talking picture equipment which was to be shipped to Broad Street Theatre, Nazareth, Pa., stating the price to be $1,375,—which was the price to be paid *by* Bee Automobile Co.; not the $1,600, which the defendant was to

pay—less $600 for equipment not shipped—the synchronous turntables, pickups and fader—, leaving a balance of $775 due the Woolfs *by* Bee Automobile Co. The order contained a note that the salesman was L. P. Clark. It also contained notations showing that part of the equipment had been shipped by the Woolfs on February 8, 1929 and part on February 12, 1929. Eckert testified that Cornwall had filled up this order in his presence and in the presence of Meeser and Clark, and over the objection of the defendant, it was received in evidence. It should not have been. The items did not correspond precisely with the articles alleged to have been sold by plaintiff to defendant in paragraph 7 of plaintiff's statement. It was not written by the witness, Eckert, or by any agent or representative of the plaintiff. It was not signed by defendant or any representative of his. It was not produced from plaintiff's files. Cornwall was not present and did not testify. It was an attempt to prove a contract by the unilateral writing of a person who was not a party to it. It contained on its face evidence that it related to a sale made by the Woolfs, or the Amplion Corporation, through Clark, to the plaintiff, and it could not be used to prove that a contract of sale had been made by plaintiff to defendant.

It was likewise error to receive in evidence plaintiff's Exhibits Nos. 3, 4 and 5.

Exhibit No. 3 was a check and voucher showing that the equipment shipped February 8, 1929, to Broad Street Theatre, Nazareth, Pa., had been sold by J. W. & W. L. Woolf, distributors for the Amplion Corporation of America, *to* Bee Automobile Co. for $775, the figure contained in plaintiff's Exhibit No. 1 aforesaid, and had been paid for by the plaintiff on June 15, 1929.

Exhibit No. 4 was a check and voucher showing that two synchronous turntable units, which were not

shipped to defendant, under the plaintiff's statement and proof, until August 23, 1929, were billed to plaintiff at $600,—which with $775 for previous equipment made up $1,375, the total billing to plaintiff company by Woolfs in Exhibit No. 1—and paid for by plaintiff.

Exhibit No. 5 was a paper taken from the files of L. P. Clark showing that on February 5, 1929, an order had been given Amplion Corporation of America for one complete synchronized turntable equipment, amplifiers, horns, units and associated equipment complete, charged *to* Bee Automobile Co., 628 Linden St., Allentown. Ship to Broad Street Theatre, Nazareth, Pa., with the following statements on it:

"Price quote the Theatre ...........$1,600.00
Price quoted Bee Auto ............ 1,375.00
Net price ....................... 1,250.00
L. P. Clark to receive 10% commission on net cost plus the difference between net cost and $1,375.00.''

This was marked by Clark, "My order No. 65384.''

All of these exhibits were objected to, but were admitted in evidence over the defendant's objection. They should not have been admitted. They shed no light on the questions at issue in the case. The plaintiff could not bind the defendant by statements appearing in self-serving voucher-checks prepared by it in making payments to the Woolfs; nor could the defendant be affected by bills presented to the plaintiff by the Woolfs or by Clark. They were not relevant in the issues (1) whether Meeser had authority to contract and (2) whether he actually did contract for it with the plaintiff. The plaintiff could not prove that it sold the equipment to the defendant by evidence that it bought and paid for it. The case of Raphael v. W. Pa. Amusement Co., 106 Pa. Superior Ct. 511, 514, 163 A. 333, relied on by plaintiff, does not help its case. The question there was whether the

plaintiff, who had done the work of installing in defendant's theatre, certain equipment which had been purchased from the Pacent Corporation, had done so for the defendant or for the Pacent Corporation. The defendant alleged that the contract with the Pacent Corporation required the equipment to be installed at the latter's expense, and that plaintiff did the work for it rather than defendant; and the papers admitted in evidence were offered by the defendant, appellant, to support its theory. We did not rule on their admissibility, for, even with them in, the verdict was against defendant. The case does not hold that a plaintiff can prove a contract by a sales slip of a third party, or by his own self-serving declarations.

The plaintiff is entitled to a verdict for $29.33. We would hold that he could not recover more than this, were it not for the fact that, after defendant knew that plaintiff claimed to have sold the equipment to defendant, the latter received the synchronous turntables which were shipped by the Amplion people, the Woolfs, on August 23, 1929, and sent them to an Allentown theatre, owned by him, and used them for eighteen months. The retail value of these turntables, (about $700, calculated on the ratio of $1,600 to $1,375), which defendant received and used long after he had refused to accept the prior equipment, and for which the plaintiff paid $600 should be paid by defendant.

The first, second, third and sixth assignments of error are sustained. The judgment is reversed and a new trial is awarded.