## Byrnes's Case.

Argued December 7, 1936. Before KEPHART, C. J., SCHAFFER, DREW, LINN and BARNES, JJ.

*Wm. B. Rudenko,* with him *Harry Shapiro,* for appellants.

*Frank J. Eustace, Jr.,* with him *Wilson & McAdams* and *M. D. Hayes,* for appellee.

OPINION BY MR. JUSTICE DREW, January 11, 1937:

P. F. Gallagher was appointed guardian of the estate of Joseph A. Byrnes, a weak-minded person, on February 5, 1919. In October, 1929, a mortgage owned by the estate was paid and the $6,165 received therefrom deposited in a checking account in the Northwestern Trust Company. On June 24, 1930, $5,000 of this deposit was transferred to an existing savings account in the same institution. On July 17, 1931, the Trust Company failed, the deposit in the savings account then totalling $6,747.10.

On October 16, 1935, the guardian filed his first and partial account, claiming credit for $6,747.10 for "Loss of cash on deposit in the Northwestern Trust Company now being liquidated by the Commonwealth of Pennsylvania." Two of the three children of Joseph A. Byrnes filed exceptions, asserting that the guardian should be surcharged for this balance. The account was confirmed absolutely. Upon the dismissal of the exceptions to the adjudication, this appeal was taken.

Appellants contend that the guardian was negligent in keeping the mortgage proceeds in the savings account for approximately thirteen months; and that it was as a direct result of such negligence that the estate suffered

the loss of which complaint is made. In cases of this type, liability depends upon whether the funds in question were deposited for the purpose of investment and not merely for temporary safekeeping pending discovery of a suitable legal investment: *Law's Estate,* 144 Pa. 499. This is a question of fact and the uncontradicted testimony, approved by the court below, conclusively determines disposition of this appeal. It revealed that the Northwestern Trust Company had funds of the ward on deposit at the time of the appointment of appellee as guardian, and that the mortgage proceeds were deposited in the savings account originally in order to obtain four per cent interest pending location of a safe and relatively permanent investment.

The adjudication expresses the following reasons for the finding of the court below:

"The Guardian was confronted by a very unusual and perplexing problem; he had about $5,000 in cash on hand, and required approximately $1,000 a year for current expenses of a rather uncertain character, for he was chargeable not only with the maintenance of his ward, but also with the support and education of the latter's children. In addition to this, the financial depression, of which we may take judicial notice, had just set in, and available and safe investments were difficult to find. Indeed, even legal investments were often looked upon as questionable by many men of reputedly sound judgment, and the most cautious investors were holding to ready cash in anticipation of further disasters in our economic structure. This guardian, therefore, who had to consider the future, as well as the immediate needs of both his ward and the children in whose favor orders had been made, adopted a temporary course of conduct in dealing with the funds entrusted to him, which, in the then state of the investment market, we cannot condemn as negligent. Indeed, we think he acted wisely in holding more funds in the form of cash than ordinarily would have been justifiable.

"For like reasons also, we think he did not hold the funds in the savings account for too long a time; and, though subsequent events have disclosed that an investment in Government bonds would have been safer, we cannot say that we would have compelled him to have acted differently had he applied to us for advice and direction in the matter."

Appellant relies upon *Hazelbaker's Estate,* 113 Pa. Superior Ct. 32. There the guardian of a minor's estate deposited funds in a savings account in a bank which failed twenty months later. The fiduciary was surcharged. The deposit in that case was concededly intended as a permanent investment, which made it illegal. Once this was established, and found as a fact by the auditing judge, surcharge was inevitable under the Fiduciaries Act of June 7, 1917, P. L. 447. Here, the testimony revealed no such intent. In this connection the adjudication states:

"The guardian testified, without contradiction, that his purpose in depositing the money in the savings account was to get a reasonable return from it while he was looking for a suitable form of investment, and all the circumstances existing at the time lend credence to his assertion of such a purpose. Thus he said 'Later, when I could not find a suitable investment I deposited the $5,000 in the savings fund account'; and again 'The only investment that was suggested by the Guarantee Mortgage Company was for a three-year period, and I did not have sufficient money left for current expenses if I made that investment for a three-year-period.' "

These findings of fact of the auditing judge are fully supported by the evidence, and they will not be disturbed: *Boyd's Estate,* 315 Pa. 283; *Jacobs's Trust Estate,* 320 Pa. 539. They are exactly what we would have found if that duty had been upon us.

The decree is affirmed, costs to be paid by the estate.