Frank's Estate.

Argued March 26, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, BARNES and PATTERSON, JJ.

500

*W. Denning Stewart,* of *Stewart & Lewis,* with him *Louis Abromson* and *Harold R. Schmidt,* for appellants.

*Park J. Alexander,* for appellee.

OPINION BY MR. JUSTICE PATTERSON, September 30, 1940:

These appeals are from a decree made after audit, and thereafter made absolute by the court en banc, dismissing exceptions taken by appellants, Maud Frank and Mortimer D. Frank, life tenant and a remainderman, respectively, to the first account of Fidelity Trust Company as trustee of an irrevocable inter vivos trust created by Jacob H. Frank, now deceased, by deed of trust dated January 2, 1931.

Appellants having indicated dissatisfaction with its administration of the trust, the trustee, on April 29, 1938, filed an account. Appellants filed exceptions, demanding that cash be substituted for an $80,000 mortgage, hereinafter called the "Diamond" mortgage, and a surcharge. In support of these demands, they contended that the mortgage investment in question was made in violation of a provision in the trust agreement that "During the lifetime of the Donor no securities shall be sold nor investments made without his approval" and that the investment, thus made without the donor's approval, was illegally and negligently made; further, that the trustee was guilty of mismanagement in permitting the

mortgagor to lease the property to irresponsible tenants and in permitting interest and taxes to become delinquent. All of the exceptions were dismissed by the learned auditing judge and in so doing he was sustained by the court en banc; hence, this appeal.

It is evident that the questions before the court below were essentially of fact rather than of law. We are thus immediately confronted with a rule, which has the effect of a rule of law (*Pusey's Estate*, 321 Pa. 248, 260), that the findings of an auditing judge, approved by the court en banc, like the verdict of a jury, will not be reversed when supported by evidence or reasonable inferences therefrom, and especially where the decision depends principally upon the weight to be given the conflicting testimony of witnesses whom he saw and heard: *Boyd's Estate*, 315 Pa. 283, 286; *Byrnes's Case*, 325 Pa. 445, 448.

It appears that, prior to January 2, 1931, Jacob H. Frank, who was president of a well known department store in Pittsburgh, had deposited the sum of $300,000 with the accountant under a revocable declaration of trust for the benefit of himself and wife, Maud Frank, which principal sum was invested largely in mortgages, including the Diamond mortgage. Following conferences, in which possible tax-saving arrangements were discussed, Mr. Frank executed two new trust agreements, dated January 2, 1931, by one of which he modified the aforementioned revocable trust and by the other of which he created the irrevocable trust with which we are here concerned, for his wife for life and, in the event of her predeceasing him, for himself for life, with remainder to their children.

Although the deed creating the irrevocable trust recited that "The Donor has assigned, transferred, and set over unto the Trustee the sum of One Hundred Thousand ($100,000.00) Dollars," the corpus of the trust was in fact made up by transferring thereto, out of the assets of the previously constituted revocable trust, a $50,000

participation in the $80,000 Diamond mortgage and a $50,000 participation in another mortgage designated the "T. A. Watkins" mortgage. No new or additional cash was deposited. Subsequently, on May 29, 1931, the $50,000 participation in the Watkins mortgage having been paid on that day, the remaining $30,000 of the Diamond mortgage and $20,000 of a mortgage known as the "C. Cook" mortgage were transferred to the irrevocable trust and the proceeds realized from the Watkins mortgage participation were used to buy bonds for the revocable trust. All of these transactions were made plainly to appear in numerous statements sent to Mr. Frank in the revocable trust and to both Mr. and Mrs. Frank in the irrevocable account, all of which were received, together with accompanying checks for income described in each statement as "Net income per voucher check herewith," without objection. And, unimpeached evidence shows, significantly, that this mortgage could have been satisfactorily liquidated by the trustee at any time up until June of 1932, had a request so to do been made, as was in fact done in the case of all the mortgages in the revocable trust, in December of 1931, nearly a year after the creation of the irrevocable trust.

The auditing judge found that the settlor, Jacob H. Frank, "knew this mortgage was in the trust and he had approved it"; the court en banc sustained this finding, saying: "Beyond all doubt, this Diamond mortgage was taken into the irrevocable trust with Mr. Frank's knowledge and approval." We are of opinion that these findings must be sustained. The conclusion is irresistible from all the evidence, both direct and circumstantial, that the transactions whereby the Diamond mortgage was transferred from the revocable to the irrevocable trust were strictly in accordance with the instructions of Mr. Frank, and that he approved of the investment until November or December of 1932. The settlor having approved the investment, all of appellants' assignments of error relating to its legality must be overruled.

See *Jacobs's Trust Estate,* 320 Pa. 539. There the settlor stipulated that "during the lifetime of grantor all investments and reinvestments shall be made in accordance with his instructions." Although concededly the settlor had not expressly approved in advance of certain mortgage investments with which it was attempted to surcharge the trustee, a finding, warranted by the evidence, that he had subsequently approved, having been made, this Court held the trustee not liable to surcharge, saying, at 542: "The investment was approved by the settlor and was therefore within the terms of the deed of trust. The fact that the approval was subsequent to the investment is of no consequence."

The assignments relating to the charges of mismanagement will likewise have to be dismissed. The record shows that all taxes assessed against the mortgaged premises were paid in full at the date of the audit, January 12, 1939, and shows further that no default in the payment of interest occurred, within the terms of the mortgage, until the payment which was due on January 14, 1933, when only a partial payment was made, whereupon the trustee immediately secured an assignment of the rents. It does not follow from the mere fact that the mortgaged premises have not produced sufficient revenue to pay taxes and interest on the mortgage when they fell due that "the trustee has been negligent in allowing the mortgagor to lease the property unwisely," as appellants contend. The fact that the mortgaged premises produced insufficient income to meet payments of taxes and interest on the mortgage, or no income at all, is clearly not sufficient to warrant the imposition of a surcharge, in the absence of evidence which would justify the conclusion that the conditions complained of are attributable to some dereliction of duty on the part of the trustee. Cf. *Heyl's Estate,* 331 Pa. 202. The present record is devoid of any such evidence.

After a most thorough study of the entire record in this case, we are forced to the conclusion, arrived at by

504

the court below, that there is "nothing in this case which would in any way justify a surcharge and compel the trustee to substitute cash for the Diamond mortgage" and that "the whole transaction, so far as the trustee was concerned, was carefully and efficiently performed." Here, as in *Jacobs's Trust Estate,* supra, "It is clear from the record that this is but another attempt to shift to the trustee a loss which is solely due to the economic conditions of the times. The settlor was obviously a man of considerable business experience, and he was apparently quite active in his supervision of the administration of the trust. The court below was amply justified in finding that he was aware of the investments in question. He did not object until the value of the investments declined along with all other values. Under the circumstances, [appellants] may not now place upon the trustee the loss that has resulted therefrom."

As our review of the record discloses no reversible error, the decree is affirmed. Costs to be paid by appellants.