Pryor's Estate.

Argued March 4, 1942.

· Before KELLER, P. J., BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.

*C. H. Welles, 3rd,* of *Welles, Mumford & McGrath,* for appellant.

*George Morrow,* for appellee.

OPINION BY KENWORTHEY, J., July 23, 1942:

On May 28, 1934, Benjamin F. Pryor, appellant, was appointed guardian of the estate of his feeble-minded brother Allan. Allan's widow (he died before the account was filed) excepted to three items in the account, (1) the payment of $1365 to Joseph Pryor, Allan's father,[1] (2) the payment of a fee of $1000 to the guardian's attorney, and (3) the payment by the guardian to himself of a commission in the amount of $303.05. The total estate amounted to $6,099.41. The court disallowed the payments to Joseph, reduced the allowance for counsel fees to $300, and disallowed the commissions. The guardian appealed.

---

[1] Part of this sum was paid to Joseph and part was paid to his administrator after his death.

(1) Appellant contended that the payments made to the father were in discharge of a valid debt which arose by virtue of numerous advances made by the father on Allan's behalf during the years 1926 to 1931. All the payments, except one for $111.50 on January 27, 1927, were supposed to have been made for arrearages on a support order against Allan in favor of his wife from whom he had been separated. In order to establish the amount of the debt, appellant offered, in addition to the receipt for the above mentioned $111.50,[2] two receipts from the probation officer totalling $175, one dated January 27, 1927, and the other dated October 13, 1928, and a statement purporting to have been signed by the father, dated February 2, 1935, that the total amount Allan had borrowed up to that time was $1365. Appellant testified he had heard the obligation discussed at home on innumerable occasions in which Allan had acknowledged the debt to be $1365, and promised to pay it.

On the other hand, there was evidence to indicate the improbability that the moneys were advanced by the father out of his own funds. The father had never worked after 1925 and had been a heavy drinker, whereas Allan had worked steadily and, for the years during which the advances were alleged to have been made, earned between $1800 and $3200 per year.

The court properly excluded the statement signed by the father on the ground it was self-serving hearsay. *Bellas v. Lloyd,* 2 Watts 401 (Pa.); *Bee, Inc. v. Pizor,* 117 Pa. Superior Ct. 598, 604, 178 A. 525; *Estate of Catherine O'Brien, Deceased,* 103 Pa. Superior Ct. 160, 164, 158 A. 319. Without it there was no evidence of

---

[2] This receipt indicated the payment to George Morrow, attorney, as "payment of damages—fees—costs to date (Clark)." The testimony about this was that Clark, for whom the money was paid, was Allan's father-in-law, and the payment was for damage done to the father-in-law's house "by throwing stones against the side and breaking the front door."

the amount of the debt except the wholly uncorroborated statement of appellant. The admission of the debt was alleged to have been made in the presence of other members of the family who were not called.

Since the evidence of the existence of the debt and (except for the part covered by the receipts) of the amount thereof was oral, its weight was for the fact-finding body, in this case the court, *(Byrnes's Case,* 325 Pa. 445, 188 A. 871; see *In re Cheponis' Estate,* 148 Pa. Superior Ct. 515, 25 A (2d) 779), and in passing upon appellant's credibility it took into consideration not only the surrounding circumstances and the probabilities, but the fact that appellant, as a beneficiary of the father's estate, had an interest in the outcome. In its original opinion the court disregarded appellant's testimony on the ground he was an incompetent witness under the Act of May 23, 1887, P. L. 158, Sec. 5, 28 PS 322. This was error because no objection was made to his testimony on that ground. See *Heller et al. Exrs. v. Fabel, Exrx.,* 290 Pa. 43, 49, 138 A. 217. But the court in its final opinion corrected itself. It said:

"Such a story [concerning the version of the origin of the debt and its amount] is incredible, particularly where the real evidence of the loans was that the son would refuse to pay a court order on the ground that he didn't have the money and the father would turn up with the money to pay it. It is much more credible that the father was paying the son's own money at such a time in order to make it appear that the son did not have the money, rather than that he was making a loan to the son.

"All the above waives the question of admissibility of testimony by the guardian ......."

After the court had entered its judgment nisi, a petition for rehearing sought leave to introduce evidence that the father had, on November 22, 1926, inherited $1380 and was, therefore, in a position to have made the advances out of his own funds. The court

refused the petition on the ground that even if the evidence were available, it would not change its view. This action would be reversible only for abuse of discretion, *Bruner, to Use of Commercial Banking Corporation v. Kendall*, 148 Pa. Superior Ct. 192, 24 A. (2d) 924. And the weight to be given such evidence was also for the court below.

The disallowance must be sustained.

(2) The allowance of counsel fees is within the discretion of the court. We will not reverse in the absence of abused discretion. *Harton's Estate*, 331 Pa. 507, 523, 1 A. (2d) 292; *Rambo's Estate*, 327 Pa. 258, 265, 193 A. 1; *Davidson's Estate*, 300 Pa. 26, 150 A. 152; *Holman's Estate*, 102 Pa. Superior Ct. 198, 201-206, 156 A. 608. Concededly the standard counsel fee in Lackawanna County for the services relating to the appointment of a guardian for a weak-minded person was $25. The fund administered consisted almost entirely of payments made by the Equitable Life Assurance Society of disability benefits paid monthly until January 1936, when a balance of $3925.75 was paid in a lump sum. The higher fee was sought to be justified on the ground that, at the inception of the guardianship, appellant feared the insurance company might resist payment on the ground Allan was suffering from syphilis at the time the policies were issued. Appellant and the attorney therefore agreed upon a contingent fee of "approximately 15%." Whether there was any basis for the apprehension does not appear; the provision in the policy supposed to have given rise to the concern was not revealed. But, in any event, the defense was never raised, the first payment was made less than two months after appellant's appointment and payments were continued regularly thereafter. The only services not routine involved a conference with a Dr. Rutherford, of the Hillside Hospital; a conference with a Dr. Snyder; some correspondence with the insurance com-

pany; "several conferences, many telephone calls and some correspondence" with an official of the Scranton Lace Company, Allan's employer; some correspondence with the State Veterans' Bureau relative to a bonus payment of $30; the preparation of a supplemental petition and order to increase the guardian's bond from $250 to $10,000; a conference with the Poor Board regarding payments to it for Allan's maintenance; a conference with the father and a woman employee of the probation office concerning the alleged debt to the father; the countersigning of checks; "innumerable" conferences with appellant concerning the management of the estate; and the preparation and filing of the account. The total amount of time consumed by these services was not stated. Undoubtedly it was substantial. But bearing in mind that charges against an estate of this kind must be "manifestly just and moderate" (*Davidson's Estate,* supra at p. 27), the court was justified in reducing the fee to $300.

(3) Compensation to a fiduciary is allowed on the basis of the value of his services to the estate. Where they have been valueless, the court should not hesitate to refuse compensation. Under the circumstances in this case, we think the court was fully justified in denying appellant's claim for a commission. See *Hanna v. Clark (No. 1),* 204 Pa. 145, 148, 53 A. 757; *Hart's Estate (No. 4),* 203 Pa. 496, 53 A. 370; *Harris et al. v. Silvis,* 86 Pa. Superior Ct. 222.

The order of the court is affirmed, costs to be paid by appellant.