# Pennsylvania Canal Company *v.* Lewisburg, Milton & Watsontown Passenger Railway Company, Appellant.

*Street railways—Canals—Bridge—Consent of canal company.*

The Superior Court in reversing a decree of the court of common pleas sitting in equity, decided that the Pennsylvania Canal Company held title to its property in fee, and was such an owner of land as to make its consent necessary before a street railway company could cross the canal upon a bridge which the canal company owned, controlled and maintained. On an appeal·to the Supreme Court, the judges who heard the case being equally divided in opinion, the decree of the Superior Court was affirmed.

Argued May 21, 1900. Reargued May 26, 1902. Appeal, No. 318, Jan. T., 1899, by defendants, from decree of Superior Court, Oct. T., 1899, No. 71, reversing decree of C. P. Northumberland Co., No. 214, Equity Docket, Dec. T., 1897, refusing injunction and dismissing plaintiff's bill. Before MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ., on reargument. Affirmed.

Appeal from Superior Court. See 10 Pa. Superior Ct. 413.

ORLADY, J., delivered the opinion of the Superior Court which was as follows :

The defendant is a street railway company incorporated by letters patent, issued under the provisions of the act of assembly approved May 14, 1889, P. L. 211. Pursuant to its charter it secured the consent of municipalities and landowners, with the exception of the plaintiff, and constructed a street railway, to be operated by electricity, between Lewisburg and Watsontown, which were the terminal points mentioned in its articles of association.

During the progress of the work the plaintiff caused the defendant and the contractors, having in charge the construction of the railway, to be notified " not to invade, encroach upon, occupy or use the canal bridge No. 101, below the lock No. 18, near Watsontown, Pa., in the county of Northumberland,·for passenger railway purposes. The ownership in fee of said canal bridge and the land upon which it is located is vested in the Pennsylvania Canal Company. The owners of said canal

bridge and the land . . . . notify you not to interfere with the same, or any other property of the said canal company wherever situate, in any manner for passenger railway purposes. They refuse to consent to your occupation of the same, and warn you against the expenditure of money in the construction of a passenger railway in the hope that you will be permitted to use the said bridge. If you persist in such occupation you will be resisted in every lawful way." At the time this notice was served, October 29, 1897, the construction had progressed to within two miles of the canal bridge, and the defendant decided to disregard it and to continue the work. On November 26, 1897, a bill in equity, with affidavits and bond, was filed by the plaintiff, and a preliminary injunction was awarded. The defendant appeared and filed an answer, but after hearing, the court refused to continue the injunction, dismissed the bill at the cost of the plaintiff, and entered the following decree : " It is ordered and decreed that the defendant be permitted to cross the canal property of the plaintiff upon the public highway and overhead bridge now in use by the general public. It is further ordered that before doing so the defendant so strengthen the said bridge as to make it sufficiently strong to carry its cars with entire safety ; that this. be done without expense to plaintiff, and in such way as not to interfere with the use of its canal ; that hereafter the defendant shall maintain said bridge, in a safe and serviceable condition, both for its own use and the use of the general public, at its own proper cost and expense," from which the plaintiff appealed. The real and only question in the case is whether the Pennsylvania Canal Company is such an owner of land as to make its consent necessary before the street railway company could cross the canal over the bridge.

The learned court specially found that " the plaintiff is the owner in fee of the land occupied by it, and the same is used for canal purposes only. "

The land in controversy was owned by one John Watson, when by virtue of certain acts of general assembly, passed in 1824, 1825, 1826, 1827 and 1828, the commonwealth of Pennsylvania commenced and completed a system of canals in the state, including one along the west branch of the Susquehanna river, which passed through the land owned .by John

Watson, and about seven and one half acres were taken by the state. The damages claimed by John Watson were paid by the commonwealth, and releases and receipts for the purchase money were given by John Watson, and after his death by his heirs at law. Under the Act of April 21, 1858, P. L. 414, entitled " An act for the sale of the state canals, " the public works of the commonwealth were sold and a portion, consisting, inter alia, of the branch of the canal under consideration, was sold to the Sunbury and Erie Railroad Company. By section 4 of this act—upon compliance with the conditions mentioned which were subsequently performed—the governor of the state was directed to, " under the great seal of the commonwealth, transfer and deliver to the Sunbury and Erie Railroad Company, their successors and assigns forever, all the works mentioned in the first section of the act, with the appurtenances, and all the right, title, and interest, property, claim, and demand whatever of the commonwealth of Pennsylvania, of, in, and to the same, and every part thereof. "

Section 5 provided that the said company, their successors and assigns, shall hold, possess, use and enjoy the said property, free and discharged from all incumbrances, except as provided in the act, "and shall have authority to grant, sell, and convey, or to lease for a term of years, the whole or any part of said property to any corporation of this state, or to any association of individuals; and their grantees shall hold and enjoy the same, together with all the rights, privileges, and franchises granted by the act to the purchaser, " and that the purchaser "shall be bound to keep up the same, including public and private bridges crossing the said canal, as heretofore done by the canal commissioners, in as good repair and operating condition as they now are; and they shall be and remain public highways forever, for the use and enjoyment of all persons desiring to use the same, subject to such rules and regulations as the owners thereof may from time to time establish."

The title thus derived is now in the plaintiff in this action.

The evidence shows that a public road was located through the Watson land before the canal was constructed, and that it was carried over the canal by a bridge which was already constructed, or was then erected by the state, and has since been maintained by the owners of the canal.

The bridge was raised above the canal, and a strip of land twenty-five feet in width on one side of the canal, and a similar strip forty-seven feet in width on the other side of the canal, and each being of a greater width than the public road, so that there was land on each side of the public road and which was exclusive of the canal waterway, was condemned and paid for by the commonwealth, and has been used for the purposes of the canal company and to make and maintain the proper approaches to the raised bridge. Independent of the other question raised, the canal company is an abutting owner as to the land within these lines.

In Wyoming Coal and Traffic Company v. Price, 81 Pa. 156, after reviewing Haldeman v. Penna. Central R. R. Co., 50 Pa. 425, Craig v. Mayor of Allegheny, 53 Pa. 477, Robinson v. West. Penna. R. R. Co., 72 Pa. 316, and Union Canal Co. v. Young, 1 Whart. 410, our Supreme Court held that "it must, therefore, now be declared as the settled law of this state, that. whenever the commonwealth took land for permanent use under the acts in question, and constructed and operated a canal thereon, she acquired an estate in the land so taken in perpetuity, and she may dispose of the same in fee."

In 1857 the Pennsylvania Railroad Company purchased from the commonwealth a canal which had been known as the " Juniata Division, " which had been constructed under similar authority to the one owned by the plaintiff, and afterwards conveyed it to the Pennsylvania Canal Company, which last-named company reconveyed it to the railroad company in 1889. As to the title of the railroad company, the Supreme Court, in Smucker v. Penna. R. R. Co., 188 Pa. 40, said: " Unquestionably, this put in the railroad company the entire right of the commonwealth, which, it is settled by numerous decisions, was not a mere right of way, but a fee in the land appropriated."

This statement of the extent of the title of the railroad company was not made to depend upon an authorized abandonment of that part of the canal, by an act of the legislature, and it was not deemed essential to the decision, as the learned judge who wrote the opinion was for many years the president judge of the courts of Huntingdon and Blair counties, through which the canal passed, and where it has been a fruitful source of litigation, both before and subsequent to its abandonment.

Conveyances to railroad, land and water companies, and for a special use, as, for instance, for a depot, for a rail or tramway, for a canal or raceway, and of minerals and ores, . . . . are always regarded as conveyances of estates in lands; and if the words of conveyance are adopted to convey a fee, the estate granted will be a fee, though the grantee is restricted in the use of the estate conveyed: Fitzgerald v. Faunce, 46 N. J. L. 536. See also United States Pipe Line Co. v. Delaware, L. & W. R. R. Co., 42 L. R. A. 572.

Hence the plaintiff's case is to be considered as if the corporation were an individual owner. The canal of the appellant is being operated as such. It is conceded that its title in the land is as large as a corporation can hold, but it is denied that it is such an entire and unrestricted estate as a natural person may hold, in that it is limited, though in perpetuity, for the purpose of the corporation's creation.

The bridge and adjacent land are conformed and adjusted to meet the requirement to keep up bridges, " as heretofore done by the canal commissioners." As maintained, it serves the double purpose—a substitute for a bisected public road, and for the use of the canal proper, freed from the right of highway over its route. To conserve both purposes, the canal company was charged with a proper maintenance of the structure; it has full power to raise or lower it, and it could not be changed or interfered with by the local authorities. It is the owner of the bridge by the same title that it owns the waterway beneath it.

Under the decree as made, the canal company is driven from the bridge and land covered by the approaches, and from its right to decide what is proper maintenance of the structure, " so as not to interfere with the use of the canal." The use to which the bridge is subjected is entirely different from the one for which it was originally constructed, or has been maintained. The change is at the cost of the railroad company, but the control of the true owner is taken away, and in its stead is substituted the judgment and dominion of the railroad company. If the condition that the canal " shall be and remain a public highway forever" should be removed by the legislature, as has been done in regard to a number of similar canals in the state, or if, by legal proceedings, the public road should be va-

cated, the whole property would be relieved from the condition and charge, which contingencies should be considered before there is imposed upon the land and bridge a permanent additional servitude. It has the right to defend its title, that it may not only use its lands for the purposes of the corporation's creation, but " grant, sell, and convey, or to lease, for a term of years, the whole or any part of said property to any corporation of this state, or to any association of individuals," hence the value might be seriously affected if the property is charged with such permanent servitudes as to destroy the reversionary interest.

There is nothing in the act of 1889, under which the defendant acquired its charter, which authorizes it to cross a canal; and to sustain the decree we must expunge from the case every right of the canal company to the bridge, which it has maintained, and consider the land and bridge simply as a public road over which the local authorities would have entire control, giving them the right to impose this servitude. They have never asserted any right of control over the bridge since it was erected in 1831, and do not have the authority now to justify the railroad company in taking that which does not wholly belong to the public. The canal company has a property right in the land and bridge which cannot be taken or appropriated by the railroad company, as it does not have the right of eminent domain : Penna. R. R. Co. v. Montgomery County Pass. Ry. Co., 167 Pa. 62 ; Penna. R. R. Co. v. Greensburg, etc., Street Railway Co., 176 Pa. 559. The state was not a mere volunteer in building or maintaining the bridge. If the bridge was a part of the public road when the land was condemned, it was the duty of the state to preserve the integrity of the highway and not to destroy it ; and if it bisected the roadway, it was its duty to supply, with a bridge or its equivalent, what it has appropriated. The canal is a public highway in the same sense that a railroad is one. " They cannot therefore for all purposes be considered private property only. As they possess a public charter as well they are subject to public supervision : " Penna. R. R. Co. v. Braddock Electric Ry. Co., 152 Pa. 116. Every legislative grant is made with the implied reservation that it shall not injure others : Commonwealth v. Penna. Canal Co., 66 Pa. 41. The land contiguous to the bridge and that

covered by it are held by the plaintiff by a fee simple title as decided by the Supreme Court, and the canal company had the undoubted right to withhold its consent.

The plaintiff moved promptly, and when the railroad company was at work two miles distant from the property in controversy, it received a positive notice that its occupation of the premises would be resisted in every lawful way, and it was warned against the expenditure of money in the construction of the railway. It elected to act in defiance of this warning, and it has not acquired any equity through the expenditure of money, after the notice was given, to entitle it to relief now. As was said in Heilman et al. v. Lebanon, etc., Street Railway Company, 180 Pa. 627, " the question in each case must depend upon the circumstances out of which it grows, and requires the exercise of judgment in determining the equities invoked. At present an action at law is the only remedy within the reach of an injured person who has suffered a railway to be built across his land without objection; but equity will interpose to protect him if he comes in proper time, by enjoining the construction until his damages have been paid or secured to his satisfaction: " Penna. R. R. Co. v. Montgomery County Passenger Railway Co., 167 Pa. 62. The present injury to the appellant may be slight, and the railway doubtless is a convenience to the public, but the invasion of the appellant's property was without right, and the injury to the appellant in having fixed upon it for all time the rights given by the decree of the court below to the railway company is very difficult of computation, so that the remedy at law is an inadequate one. The object of the preliminary injunction is to preserve the subject of the controversy in the condition in which it is until the merits can be heard. It cannot be used to take property out of the possession of one party and put it in the possession of another: Fredericks v. Huber, 180 Pa. 572.

The first, second and third assignments of error are sustained and it is not necessary to consider the fourth. The decree refusing the injunction, dismissing the bill in equity at the plaintiff's cost, permitting the defendant to cross the canal property of the plaintiff and directing the manner of use of the bridge and maintenance thereof by the defendant is reversed. It is now ordered that the Lewisburg, Milton and Watson-

town Passenger Railway Company, its officers, agents, servants, and successors be and hereby are perpetually enjoined from occupying or using the property of the Pennsylvania Canal Company, described in the bill, answer and decree of the court below, for railway purposes, the appellee to pay the costs.

*Error assigned* was the decree of the Superior Court.

*Richard C. Dale,* with him *W. H. Hackenburg* and *George S. Graham,* for appellant.

*Cyrus G. Derr* and *J. C. Bucher,* for appellee.

PER CURIAM, June 4, 1902 :

The judges who heard this case being equally divided in opinion, the judgment is affirmed.