Holman's Estate.

Argued March 12, 1931.

Before TREXLER, P. J., KELLER, LINN, GAWTHROP, CUNNINGHAM, BALDRIGE and DREW, JJ.

*F. Lyman Windolph,* of *Windolph and Mueller,* for appellant.

*James G. Hatz,* for appellee.

OPINION BY GAWTHROP, J., April 15, 1931:

Maggie P. Holman was declared a weak-minded person by the court of common pleas of Lancaster County on January 17, 1914, and on January 24, 1914, W. F. Gorrecht was appointed guardian of her property and assumed the duties of the trust. He filed a first account in June, 1920, to which exceptions were filed, and was surcharged $359.70. Maggie P. Holman had two children, John F. Holman and Helen B. Holman (now Mrs. Pontius). They made known to Gorrecht their desire that he retire as guardian in order that a trust company might be appointed in his place. Early in the year 1923, Gorrecht informed them as to the terms on which he would be willing to retire, which were that he should be allowed a commission of four per cent. on the corpus of the estate in his hands; that he be relieved of the surcharge of $359.70; that he should be allowed a commission of five per cent. on the income collected by him; and that the investments which he had made should not be changed by his successor until April 1, 1924. He finally agreed to accept a commission of three per cent. on the corpus and five per cent. on the income, together with reimbursement for the surcharge, and resigned on June 18, 1923, after filing a second account, which was duly confirmed, in which he took credit for the items above mentioned.

On the same day the petition to discharge him as guardian was granted to the court below, and the Northern Trust & Savings Company, appellant, was appointed to succeed him. The former guardian turned over to appellant the amount with which he charged himself in his final account, to wit, $36,951.37. This amount consisted of nine mortgages on Pennsylvania real estate for $20,000; one mortgage on land in the State of Delaware for $3,500; Liberty Bonds to the amount of $600; two promissory notes, without confession of judgment, aggregating $3,500; a judgment note, which had not been entered, for $125; and uninvested cash to the amount of $9,126.37. On March 29, 1929, Maggie P. Holman died intestate and letters of administration on her estate were issued to her two children, John F. Holman and Helen B. Pontius, who were her sole heirs. On April 20, 1929, appellant filed its first and final account as guardian, showing a balance in its hands of $34,186.31, as the corpus of the estate, and a balance of $2,997.78 from the $14,500.92 of income which it had collected. John F. Holman and Helen B. Pontius, individually and as administrators of their mother's estate, filed exceptions to the account, complaining of the credits claimed against the corpus and income for counsel fees paid to F. Lyman Windolph, Esq., and for compensation paid to the accountant, and the account was referred to an auditor to pass upon the exceptions and make distribution. The auditor submitted a report dismissing the exceptions taken to the amount of compensation paid for legal services, and the commission of five per cent. claimed on income, but sustained the exception taken to the commission of five per cent. charged on the corpus, which amounted to $1,847.56, and awarded the accountant $1,000 as compensation for its services in the care of the principal of the estate. Mr. Holman and his sister renewed their exceptions to the counsel

fees before the court below and contended that the auditor erred in refusing to limit the commissions of the guardian to two per cent. in accordance with an alleged agreement between the Trust Company and these exceptants at the time the Trust Company was appointed guardian. The accountant filed exceptions to the reduction of its commission on the corpus by the auditor to $1,000 and to the refusal to find whether or not it agreed, at the time of its appointment, to accept two per cent. on the corpus as its commission thereon. The court below held that the counsel fees of $900 claimed against the corpus were excessive and should be reduced to $700; that the counsel fees of $350, for which credit was claimed against income, was unwarranted and should be disallowed entirely; that the compensation which the accountant claimed against corpus was excessive and should be further reduced from $1,000 to $739.03, which is two per cent. of the total debits in the corpus account. The exceptions filed by the accountant were overruled and the balance found to be due was awarded to John F. Holman and Helen B. Pontius in the equal shares. The accountant appeals.

The only questions which we deem to be properly before us are whether the court below erred (1) in refusing to allow the credit claimed by appellant for payment for legal services rendered to the estate by Mr. Windolph; (2) in refusing to find whether or not appellant made an agreement with John F. Holman and Helen B. Pontius before it was appointed guardian, that it would charge a commission of two per cent.; (3) in awarding the balance to the heirs of Maggie P. Holman, instead of to her administrators.

(1) The accountant claimed credit for the following payments to Mr. Windolph from the principal estate: $200 "atty. fee in re appointment;" $100 "for seven real estate titles covering mtges. placed by

former guardian;'' and $600 ''counsel fee.'' It also claimed credit for the payment of a ''counsel fee'' of $350 from the income. The two hundred dollar item is not involved in this dispute, although this amount was paid by the guardian on July 20, 1923, out of funds in its hands belonging to the estate. This payment was really made for services rendered to John F. Holman and his sister in connection with the retirement of the former guardian and the securing of the appointment of the Trust Company. John F. Holman testified that when the arrangement had been made for the retirement of Gorrecht as guardian and the Trust Company had been appointed, he agreed with Mr. Windolph upon the payment of $200 from the estate for the legal services which he had rendered. The court aptly said that ''even though the Holman children were not then interested, they are now, and we only ask them to do what they agreed to do.'' We consider then whether the aggregate of the items which make up the allowance of $1,050 claimed for counsel fees is fair, just and reasonable taking into consideration the character and amount of the legal services rendered. The determination of this question is closely analogous to the question whether the compensation claimed by an executor, trustee or guardian is just and reasonable. The matter is ''peculiarly within the province of the court below, who in most cases, is better able to judge as to the reasonableness of such charges than the appellate court and, unless the discretion has been clearly abused, the judgment of the lower court in such matters must stand'': Griffith's Estate, 96 Pa. Superior Ct. 242, 245. The allowance for services of counsel in settling an estate is largely a matter for the court below: Wood's Estate, 272 Pa. 8. There is a presumption that the decision of the court below is right: Com. v. T. & M. Bank, 268 Pa. 526; Mitchell v. Liberty Clay Products Co., 291

Pa. 282, 291. Before the auditor appellant undertook to carry its burden of proving that the fees paid to its counsel were just and reasonable by his testimony as to what services he performed for it, and by the testimony of three members of the bar of Lancaster County, who testified that they were familiar with the value of legal services of the character and extent rendered by Mr. Windolph, and that the fees for which credit was asked were fair, just and reasonable. From Mr. Windolph's testimony it appears that he examined the titles to seven of the properties covered by mortgages which the accountant took over from the former guardian; that after "considerable correspondence" between him and an attorney in Wilmington, Delaware, relative to the mortgage held on property in that state, he prepared an assignment of the mortgage from Gorrecht to the Northern Trust & Savings Company and later attended to the satisfaction of the mortgage; that the president of the Trust Company conferred with him once or twice about two of the notes taken over from Gorrecht; that he issued an execution on the Richmond note for $125; that a sheriff's interpleader proceeding followed which required the taking of depositions and the making of an argument in court; he also issued an attachment execution on this note and filed interrogatories directed to the garnishee. These proceedings resulted in the collection of the note. He had two conferences with Miss Holman relative to the support of the mother from the income of the trust estate. He had numerous conferences with Mr. Ryder, the president of the Trust Company, during the first six months after the appointment. He "had some correspondence" with a trustee of an estate in New Jersey from which Mrs. Holman received income. His letter files indicate that he wrote about forty letters in connection with this

estate. He prepared and filed the final account of the guardian.

For these legal services rendered to the guardian an allowance of $1,050, $350 of which was allocated to the income account, was asked. The court below, in the exercise of the broad discretion vested in it, allowed but $500 and has given us the benefit of the reasons for his conclusion. He found that there was no occasion for the employment of counsel in the collecting or disbursing of the income; that no reason had been shown for allowing a charge of $350, or any other amount, against the income account; and that $500 is a just and reasonable compensation for the services rendered by counsel to the guardian, including the preparation and filing of the account. After considering all the testimony and the arguments of counsel, we are convinced that an examination of the titles to the properties covered by the mortgages which were taken over by the accountant from the former guardian was a proper precaution to take; that the services rendered by counsel in this connection should be taken into consideration in determining what is a just and reasonable compensation for counsel in this case; and that the elimination of this item of service from consideration in fixing a reasonable counsel fee was a mistake which amounts to an abuse of discretion by the court below. With respect to the charge of $350 for counsel fees against the income account, the record does not show that any legal service was performed in the collecting or disbursing of the income. As the balance of the income and corpus accounts passes to the same persons, it seems to us that there was no occasion for allocating any part of the charges for legal services to the income account. In fairness to Mr. Windolph we observe that the charging of a counsel fee of substantially two and a half per cent. of the gross income against the income

account seems to have been done in accordance with the practice in Lancaster County. For, one of the able and eminent counsel who testified that the fees charged by Mr. Windolph were fair, just, reasonable and customary, stated that "our commissions here (to an accountant) are five per cent. on the personal and two and a half per cent. on the real estate and our lawyers' fees as a matter of fact are always one half the commissions charged." As well stated by the court below "under some circumstances such compensation might be very much too large and in other cases too small ...... The law has laid down the rule of just and reasonable compensation for services rendered and no more, and we are bound to govern our decision by this rule rather than rest it on any other basis." The question then is whether the court below erred in reducing the amount charged by the accountant and allowed by the auditor for counsel fees. Appellant relies upon the rule laid down in Moore's Estate, 228 Pa. 516, and in Com. v. T. & M. Bank of Pittsburgh, supra, that while the lower court has discretion as to the compensation of a trustee, yet in adjusting the same it cannot arbitrarily and without reason ignore the undisputed evidence and the findings based thereon. It is urged that as no evidence was offered to show that the services were not worth the amount charged, and the evidence of the three members of the bar that the charges were just and reasonable was not met by any countervailing proof, the action of the court below in reducing the counsel fees allowed by the auditor was arbitrary and unreasonable and amounted to an abuse of discretion. We are unable to adopt this conclusion. While the opinion of other lawyers is competent on the question of the value of an attorney's services rendered to an executor, trustee or guardian in and about the business of the estate, and may not be disregarded (Wood's Estate, supra) it is

not so conclusive as to take the place of the judgment of the court whose duty it is to pass on the question of the value of the services. This is particularly true in the case of a lunatic, or a weak-minded person whose property has been placed in the hands of a guardian under the statute. Charges against a lunatic's estate are to be allowed only on the most moderate scale of compensation: Davidson's Estate, 300 Pa. 26. In that case the appellate court reduced to $50,000 a counsel fee of $100,000 allowed by the court below. Our conclusion is that the court below was justified in refusing to allow accountant to charge any separate counsel fee against the income account, but that in refusing to consider the value of the services of counsel in examining and furnishing certificates of title to the properties covered by the mortgages and reducing the $600 item charged as a counsel fee for general services to the accountant, the court went too far; and that under all the circumstances a counsel fee of $700, in addition to the fee of $200 paid for services rendered in connection with the appointment of the substituted guardian, is proper compensation.

(2) The learned president of the court below did not agree with the conclusion of the auditor that the parties interested in an estate and on whose petition a guardian is appointed cannot stipulate for a certain fixed compensation in case the court makes the appointment. We are in accord with his statement that such agreements are continually made and that while the court has a general supervision over the matter of compensation attempted to be fixed by such agreement, "it does not lie in the mouth of any party to such an agreement to repudiate it." Conceding that appellant's agreement with the Holman children (if made) to charge but two per cent, on the corpus as compensation if it were appointed guardian did not constitute a contract, nevertheless we are of opinion

that the auditor should have found whether or not such an agreement was made and, if he found that it was made, should have awarded compensation to appellant on that basis. There is evidence which would support a finding that such an agreement was made by Mr. Windolph for appellant. He denies it. Appellant concedes in its brief that'he had authority to act for it and that any such agreement made by him binds it and that if it was made it ought to be carried out. We think that in justice to appellant and to Mr. Windolph, as well as to appellees, the court below should have returned the case to the auditor for a finding on this question, or should have made a finding on the record before it. We refrain from deciding what the compensation of the accountant should be if it be found that no such agreement was made. This is a question which should be decided first by the court below upon consideration of the elements which properly enter into it. But we have no hesitation in expressing our opinion that in the absence of the agreement above referred to the allowance of but $739.03 (2%) on the corpus of this estate, which has now terminated, is too low. The opinion of the court below makes it perfectly clear to us that he arrived at this amount by assuming that five per cent. is the maximum sum which should be paid out of the corpus of the estate as compensation to both guardians and then concluding that as the former guardian got three per cent. of the corpus "there would be two per cent. left for the present guardian." He said: "Two per cent. of the corpus, together with three per cent. to the other guardian, was in our opinion quite sufficient for this estate to pay." These are not the elements by which appellant's compensation is to be determined. The question is not one of percentage but of compensation, which is to be fixed by considering the amount of the estate, the labor performed and the responsibility imposed: Har-

rison's Estate, 217 Pa. 207. The fact that there was a prior guardian who received part of his compensation out of the corpus of the estate does not affect the question, what is just compensation for his successor.

(3) The auditor awarded the balance for distribution to John F. Holman and Helen B. Pontius, administrators of Maggie P. Holman. The court awarded it to them as individuals. The award should be made to the administrators, even though they are the sole heirs. The settlement of inheritance tax alone makes this necessary.

The decree is reversed and the record remitted with a procedendo.