Rambo's Appeal.

Argued April 22, 1936. 

 Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*James L. Hogan,* with him *Joseph L. Holmes,* for appellants.

*Harold F. Reed,* of *Reed & Ewing,* for appellee.

OPINION BY PARKER, J., October 5, 1936:

These are appeals from a decree of distribution by a court of common pleas after the filing of a first and

final account by Beaver Trust Company, guardian of Ivy May Rambo, a person of weak mind. Appeals were taken by Vernon Rambo and Mabel M. Giles, son and daughter of Ivy May Rambo, and they complain of the part of the order of distribution which authorizes the trust company to pay the sum of $2,000 of the balance for distribution in the form of a certificate in a mortgage pool in lieu of cash for that amount and to the part of the order which directs distribution to be made to an executor or administrator of Ivy May Rambo rather than directly to the appellants.

We were informed by counsel at the oral argument in this court that testimony was taken by the court below on hearing in support of its decree, but that no stenographic or other record was made of the testimony so given. As a result we have only the account, order and decree of distribution with findings of fact and conclusions of law, opinion on exceptions, and a copy of the will of Isabell Potts.

Appellants claimed that this balance for distribution should have been awarded to them as residuary legatees under the will of Isabell Potts. We find no merit in this contention and agree with the court below in that respect. We will briefly summarize the pertinent facts as found by the court of common pleas. Isabell Potts died August 23, 1924 after having made her will dated July 18, 1924, wherein she directed that her funeral expenses and debts should be paid, bequeathed $100 to a cousin and then provided: "I give, bequeath, and devise all of my property and estate, real, personal and mixed, which shall remain after the foregoing provisions are carried out to my daughter, Ivy May Rambow, of Raccoon Township, Beaver County, Pa., and I direct that in case her mental condition shall not be such that she can manage her estate, that any one who may be lawfully appointed to manage said estate for her, shall have full authority under the

proper Court's direction, to use as much of the estate and property herein willed to my said daughter, as may be necessary, even to the whole hereby willed for the purpose of furnishing proper care as needed, or for treatment and cure of my said daughter, so far as a cure may reasonable be considered necessary. Subject to the foregoing provisions, I give, bequeath, and devise all of my estate and property, real, personal, and mixed as may remain, if any remains, to the children of my daughter, Ivy May Rambow to wit: to Mabel M. Giles and Vernon Rambow."

On November 2, 1925 on petition to the court of common pleas of Beaver County, Beaver Trust Company was appointed guardian for Ivy May Rambo on the ground that she was not able to take care of her property "owing to insanity or unsoundness of mind." Ivy May Rambo died August 4, 1934, leaving the two children above mentioned to survive her.

The first question that faces us is whether the court of common pleas has jurisdiction to make distribution of the estate of Ivy May Rambo. We agree with the court below that it has not. Mrs. Rambo was declared an incompetent and a guardian was appointed for her estate under the Act of May 28, 1907, P. L. 292, as amended (50 PS 941 et seq.), and by section 6 of that act such guardians have "precisely the same powers" and are subject to the same duties as a committee on lunacy. A careful examination of the statutes dealing with lunatics and feeble minded persons discloses a definite purpose upon the part of the legislature to confine the duties of committees and guardians so far as relates to the estates of such incompetents to the management thereof during life. A committee of the estate is given the "management of the real and personal estate of such person" (50 PS 753), and on termination of the trust the final account is to be a full and complete account of the management of the estate (50

PS 757). The Act of 1907 discloses a like intent to confine the duties of a guardian to that of management and to require an accounting of such management. There is not a suggestion that a committee or a guardian in case of death shall have power to distribute the proceeds among heirs, devisees, legatees or creditors. On the other hand the orphans' court is given jurisdiction by Act, June 7, 1917, §9 (e) to make "distribution of the assets and surplusage of the estates of decedents among creditors and others interested." We definitely held in the *Estate of Maggie P. Holman,* 102 Pa. Superior Ct. 198, 208, 156 A. 608, that even though the claimants are the sole heirs, the balance shown by the account of a guardian for a weak minded person should be awarded to the administrator of the decedent. "The proceeding was a purely personal one, and is necessarily terminated on the death of the party": *Ebling's Estate,* 134 Pa. 227, 232, 19 A. 847.

But it has been suggested that the fund for distribution should have been awarded to the personal representatives of Isabell Potts rather than to those of Ivy May Rambo. The question as to the estate taken by Ivy May Rambo in the property received from the executor of Isabell Potts was not discussed by the court below nor by the parties in their briefs. We are unable to determine from the findings of the court below whether it was of the opinion that Ivy May Rambo took a life estate or an absolute estate in the property so received. That is a question which ought to be determined after all parties in interest are made parties to the record and they have had an opportunity to present their respective views. (See *Byrne's Est.,* 320 Pa. 513, 181 A. 500.) All that the record shows, in this respect, is that the guardian received from the executor of Isabell Potts $200 on account and $3,952.21, "Balance due in full settlement of account."

In any event if the executors of the Potts' Estate

desire to raise the question it may be done on the distribution of the estate by the executor or administrator of Ivy May Rambo. This question can be disposed of just as expeditiously on the audit of the Rambo estate when all relevant facts can be presented. (Cf. *Kelley's Est.*, No. 1, 253 Pa. 466, 468, 98 A. 687.)

There is an additional reason why we feel that the decree of the court below ought not to be reversed. While the appellant in its argument states that the court found as a fact that the source of the property for distribution was the Estate of Isabell Potts, an examination of the opinion will not support that statement. Neither does it appear from the account which is the only evidence presented to us on the subject that the balance for distribution was acquired solely from that source. The account does show the receipt of $4,152.21 from the executor of Isabell Potts but it also shows the receipt of a large amount of money by way of rent, without anything to indicate the source of the property from which such rent was received. Consequently we have no basis for concluding that the property for distribution was all received from the Estate of Isabell Potts. These are likewise questions which may be disposed of on the settlement of the Estate of Ivy May Rambo when creditors of Ivy May Rambo may be heard and it may be determined whether any inheritance tax is due the commonwealth.

Under the circumstances present we are of the opinion that the decree of the court directing the guardian to turn over the balance to the administrator of Ivy May Rambo ought not to be disturbed.

There remains for consideration the question as to the portion of the decree which authorized the guardian to deliver to the administrator certificates of participation in a mortgage pool in lieu of cash. In *Mc-Guffey's Estate*, 123 Pa. Superior Ct. 432, 187 A. 298,

we have discussed a similar question raised in a distribution in an orphans' court. As in that case the propriety of the investment in certificates in a mortgage pool is not questioned. There the evidence produced before the court and on which it based its decree authorizing the delivery of participation certificates was preserved and shown to us and the evidence failed to disclose any basis for the finding by the court of a reason why such participation certificates should be received in lieu of cash. Here we must assume that there was evidence supporting the award. There is not anything on the record to indicate that the court in this case did not have ample evidence to furnish it satisfactory reasons for making the decree which it did. It is contended however that this being a proceeding in the court of common pleas the same rule should not be applied since the Fiduciaries Act of 1917 does not apply. We agree with the premise that the Fiduciaries Act is limited to fiduciaries in the orphans' court, but we are still of the opinion that the court of common pleas had the power to make the order in this proceeding which it did. Although the Fiduciaries Act of 1917 does not deal with trusts administered in the court of common pleas and distribution of assets in kind is the exception and not the rule *(McGuffey's Est.,* supra), we believe that the exception should be extended to committees for lunatics and guardians for lunatics and feeble-minded persons. The legislature has declared a very definite policy with reference to all trusts administered in the orphans' court and it is a sound principle that has a strong appeal to reason. It is only where the court is satisfied that there is a reason for directing distribution in kind that the court may direct such distribution. Reasons might well appear why such an order should be made in the case of trusts involving weak minded persons for by the Act of June 13, 1836, P. L. 589, §34 (50 PS 755) the court may

authorize a committee to invest in stocks *(Riebel's Est.,* 321 Pa. 145, 184 A. 118). The forced liquidation of such stocks might result in unnecessary losses. Another reason why the exception should not be limited to trusts administered in the orphans' court is suggested by the fact that the jurisdiction of trusts inter vivos is concurrent in orphans' court and common pleas *(Schwartz v. Schwartz,* 316 Pa. 318, 175 A. 386). Certainly the rule should not be dependent upon the court in which the estate is administered.

We do not find any decisions of the appellate courts inconsistent with our conclusions. In *Weir's Est.,* 251 Pa. 499, 96 A. 1086, and *Letterle's Est.,* 248 Pa. 95, 93 A. 935, personal property was given to one for life with remainder over and the life tenant took possession of the personal estate. Under such circumstances prior to the change effected by §23 of the Fiduciaries Act, the relationship was one of debtor and creditor and the life tenant was liable for the appraised value of the property secured by him. This created a different situation. In *Simpson's Est.,* 253 Pa. 217, the decision turned upon the jurisdiction of a court of common pleas over the subject matter. Our conclusion is that the court of common pleas in the case of estates of lunatics and persons of feeble mind has the power where satisfactory reasons are shown to it to authorize the delivery of assets in kind in lieu of cash. This, however, is an exception and is not general authority for the fiduciaries administering such estates to disregard their primary duty to be prepared to make settlement in cash and it is only in exceptional circumstances that such fiduciaries may be relieved of their responsibility to account in cash.

Decree affirmed at cost of appellants.