## Piperberg Estate

*William W. Wogan,* for accountants.

*Raymond R. Smith* and *Judson E. Ruch,* for guardian.

SHEELY, P. J., (fifty-first judicial district), specially presiding, December 20, 1952.—The first and final account of York Trust Company, David M. Piperberg and William Piperberg, executors of the estate of Jonas Piperberg, late of the City of York, York County, Pa., was filed in the office of the Register of Wills of York County on April 28, 1952, and, after due and legal advertisement, was presented to this court for audit and confirmation on June 4, 1952, and continued for the purpose of hearing argument with respect to the correctness of certain disbursements of income, and finally closed on September 20, 1952.

The court of its own motion takes notice of the distribution of income as made by the accountants to the Western National Bank of York, guardian of Cevia Piperberg, a person under incapacity. The court finds it necessary to consider the propriety of this distribution. Comments and disposition of the subject appear hereinafter.

Jonas Piperberg, late of the City of York, York County, Pa., died on January 14, 1949, leaving a will dated December 13, 1945, which was duly admitted to probate by the Register of Wills of York County, Pa., on January 25, 1949. By his will he made certain provisions (hereinafter more fully considered) for his wife, Cevia Piperberg, who had been a patient at the Harrisburg State Hospital since 1940. On February 28, 1949, Cevia Piperberg, also known as Celia Piperberg, and Cecelia Piperberg, was adjudged a person of weak mind by the Court of Common Pleas of York County, and the Western National Bank of York, Pa., was appointed guardian of her estate. The guardian then presented its petition to the court of common pleas for authority to file an election on behalf of its ward to take against the will of Jonas Piperberg. The court

of common pleas, on June 2, 1950, filed an opinion and decree discharging the rule to show cause and denying authority to the guardian to take against the will. Thereafter, on July 24, 1950, counsel representing various parties in interest filed a stipulation with the court of common pleas stipulating that the "opinion" as filed should be amended by adding to the last paragraph thereof the following paragraph:

"The estate herein created by the testator for the benefit of his widow, Civia Piperberg, sometimes known as Celia Piperberg, and as Cecelia Piperberg, is a life estate and the net income from the trust fund therein created is to be paid by the trustees thereof to the guardian of the estate of Civia Piperberg, sometimes known as Celia Piperberg, and as Cecelia Piperberg, the Western National Bank of York, York, Pa. At the present time the income from said trust fund consists of rental payments on leased real estate held by the trustee and is more than adequate to care for and maintain Civia Piperberg, sometimes known as Celia Piperberg, and as Cecelia Piperberg."

The court approved the stipulation and made an order accordingly.

Considering the order amending the opinion filed by the court of common pleas as a direction that the income from the estate should be paid to the guardian of Cevia Piperberg, the executors under the will of Jonas Piperberg paid to the Western National Bank of York, Pa., as guardian, the sum of $10,000 accumulated income. In their account as executors they have taken credit for this distribution. The credit cannot be allowed.

The difficulty seems to be that the executors misconstrued what was done in the court of common pleas and what the court of common pleas had jurisdiction to do. That court did not *order* or *direct* the executors, or the trustees, to pay the income from the estate to

the Western National Bank as guardian of Cevia Piperberg, as contended by counsel. The stipulation filed merely stipulated that the opinion of the court should be amended by adding the additional paragraph, and the order of court on July 24, 1950, merely directed that "the opinion rendered by this court on June 2, 1950, . . . is hereby amended by adding to the last paragraph thereof the following paragraph: . . ."

No amendment was made to the *decree* entered pursuant to the opinion which simply discharged the rule to show cause why the guardian should not be authorized to file an election to take against the will of Jonas Piperberg. That was the only decree or order entered by the court of common pleas and was the only decree or order which it had jurisdiction to enter.

The only matter before the court of common pleas for determination was whether the guardian should be permitted to file an election to take against the will. In determining that question the court was required to interpret the will to ascertain whether the needs and welfare of the ward were satisfactorily provided for: Harris Estate, 351 Pa. 368. In its original opinion the court had pointed out that "under the terms of the will the first object of testator's bounty was his wife, he creating a trust fund which is *for her benefit*, and he further directs that the income and principal, if necessary, be used for her support and maintenance."

The court therefore found that the needs of the incompetent were satisfactorily provided for and discharged the rule to show cause why the election should not be filed. The amendment made pursuant to the stipulation explained more fully this line of reasoning by pointing out that the estate created by the testator was a life estate and that the net income from the trust fund is to be paid by the trustees thereof to the guardian of the estate of Cevia Piperberg.

There was no question before the court of common pleas as to the distribution of the estate of Jonas Piperberg, and the court did not order the executors, or the trustees, to pay the income to the guardian of the estate of Cevia Piperberg, and it would have had no jurisdiction to order them to do so. The jurisdiction to adjudicate the will and to direct distribution of funds in the hands of executors is exclusively in the orphans' court. Section 9(e) of the Orphans' Court Act of June 7, 1917, P. L. 363, provided that:

"The distribution of the assets and surplusage of the estates of decedents among creditors and others interested" should be within the jurisdiction of the orphans' court. "It is now the settled law, that the orphans' court has exclusive jurisdiction over all things pertaining to the settlement and distribution of estates, including the claims of creditors, next of kin and legatees": Linsenbigler v. Gourley, 56 Pa. 166, 172 (1867); Gerety Estate, 349 Pa. 417, 419 (1944); Marsteller's Estate, 76 Pa. Superior Ct. 377, 380 (1921); Rambo's Appeal, 123 Pa. Superior Ct. 565, 569 (1936). In the last cited case, the court held that the court of common pleas did not have jurisdiction to make distribution of the estate of a deceased weak-minded person to the heirs of such person, but that the balance in the hands of the guardian must be distributed to the personal representative for further proceedings in the orphans' court. Any order of a court of common pleas attempting to adjudicate a will and to direct distribution would be a nullity and would not protect executors making payments thereunder. "An adjudication of a court without jurisdiction is 'void and of no legal efficacy'": Patterson's Estate, 341 Pa. 177, 182 (1941).

It was suggested by counsel that since the court of common pleas was required to construe the will to determine whether the needs and welfare of the ward

were satisfactorily provided for, it should also have jurisdiction to order distribution in accordance with its construction of the will, as otherwise injustice might result if the orphans' court's construction of the will did not agree with its construction. The answer to this contention is that the legislature has conferred no such jurisdiction upon the court of common pleas, and if there were any doubt as to the correctness of its interpretation of the will an appeal should have been taken from its order so that the matter might be passed upon by the appellate courts.

It is also suggested by counsel that the court of common pleas did have jurisdiction because counsel for all parties in interest joined in the stipulation. It is elemental that jurisdiction of the subject matter cannot be conferred by consent: Patterson's Estate, 341 Pa. 177, 180 (1941); Pennsylvania Commercial Drivers Conference et al. v. Pennsylvania Milk Control Commission et al., 360 Pa. 477, 485 (1948). Furthermore, all parties in interest did not join in the stipulation. Certain minors were represented by guardians ad litem who had no authority or power to stipulate concerning the rights of their wards.

"Guardians and trustees ad litem are in a special sense representatives of the court. Their function is to represent and protect unrepresented minors and the interests of those unborn or unascertained": Kenna Estate, 348 Pa. 214, 219 (1943).

"It is equally clear that if such unborn children have an interest in the trust estate, a guardian ad litem appointed to represent their interest cannot consent to its being divested. A guardian ad litem has authority to protect the interest of his ward, but never has authority to consent to anything prejudicial to his ward": Gingrich Estate, 57 Dauphin 102 (1945).

Nor can this court accept the construction of the will by the court of common pleas "as a valid exercise of

power by the court of common pleas and accepted as binding on all the parties" if by that statement it is intended that this court could accept as binding an order of the court of common pleas directing distribution under a will. The interpretation placed upon the will by the court of common pleas is entitled to consideration and great weight, but the orphans' court must interpret the will on its own account.

It follows that the executors were without authority to make the payment of $10,000 in accumulated income to the Western National Bank as guardian of the estate of Cevia Piperberg, and that they must be surcharged for that amount.

We come then to the question of what the will of Jonas Piperberg actually provides with relation to his wife. The provisions for her are contained in the residuary clause wherein testator gives the residue of his estate to the York Trust Company and David Piperberg in trust. Under paragraph (*a*) he authorizes his trustees to invest the estate in legal securities. Under paragraph (*b*) he authorizes his trustees to operate any or all of his real estate "during the existence of the hereinafter created life estate for the benefit of my wife." Under paragraph (*c*) he directs his trustees "to pay from the income and/or principal of my estate, if necessary, the cost of the maintenance and support of my wife, Cevia Piperberg, so long as she remains a patient in the Harrisburg State Hospital." Under paragraph (*d*) he directs his trustees, upon the death of his wife, "to convert my entire estate into cash and to divide the remainder thereof in the following manner." He then gives shares of his estate to certain of his children and directs that the shares of other children shall continue to be held in trust under specified conditions.

It is the contention of the guardian of the estate of Cevia Piperberg that the provisions of the residuary

clause create in her a life estate entitling her to receive all of the income of the trust estate in excess of the amount required for her maintenance and support in the Harrisburg State Hospital. This contention is based first upon the expression in paragraph (*b*) of the residuary clause of the will wherein testator authorizes his trustees to operate his real estate "during the existence of the hereinafter created life estate for the benefit of my wife."

The second basis for the contention is paragraph (*d*), wherein it is provided that "upon the death of my wife . . . I direct my Trustees to convert my entire estate into cash and to divide the remainder thereof in the following manner. . . ."

The word "remainder" is the correct legal language to pass real estate after the expiration of a life estate therein: France's Estate, 75 Pa. 220, 224 (1874). The third basis for the contention is the presumption against a partial intestacy or, in other words, that the testator intended to dispose of his entire estate.

The difficulty with the contention is that testator did not, at any place in his will, attempt to create a life estate with the entire income payable to his wife. The provisions of paragraph (*b*) do nothing more in this regard than to indicate an intention to create a life estate for her benefit. Had testator used ambiguous language in setting up an estate for his wife, the provisions of paragraphs (*b*) and (*d*) and the presumption against intestacy might be used to determine his exact intention, but the language used by him is not ambiguous. He expressly directed his trustees to pay from the income and/or principal of his estate, if necessary, the cost of maintenance and support of his wife so long as she remained a patient in the Harrisburg State Hospital. This was the only provision for his wife contained in the will, and there is nothing to warrant a construction extending and enlarging it by reference to other parts of the will. We must conclude

either that testator intended to do no more than to provide for the maintenance and support of his wife at the Harrisburg State Hospital or that he inadvertently omitted another and further provision for her. The latter conclusion is entirely unlikely in view of the lettering of the paragraphs of the residuary clause and in view of the provisions of later paragraphs wherein he indicated he knew how to create a life estate and to restrict it so as to exclude certain persons from benefiting from it. In any event, what was said in Butler Estate, 364 Pa. 279, 282 (1950), is applicable here:

"It is well settled, of course, that one who writes a will is presumed to intend to dispose of all of his estate and not to die intestate as to any portion of it; accordingly, a will must be construed to avoid an intestacy if it is possible to do so, Carmany Estate, 357 Pa. 296, 299 (1947), and all doubts are resolved against an intestacy, Siple v. Greumelli, 357 Pa. 237, 241 (1947). But the disinclination of a court to declare a partial intestacy is not a sufficient warrant to permit interpretation to assume the proportions of reformation, and the court may not properly insert into a will a substantive disposition of property which the testator, whether by design or inadvertence, failed to make. Verner Estate, 358 Pa. 280, 285 (1948)."

We conclude that testator intended nothing more than to provide for the maintenance and support of his wife so long as she remains a patient in the Harrisburg State Hospital.

In the briefs it is suggested that this conclusion is entirely unreasonable since the primary object of testator's bounty was his wife. On the other hand it could be urged that testator's purpose was to provide for the maintenance and support of his wife without placing any portion of his estate in such position that it might be acquired by any of his wife's relatives, so that he might preserve his entire estate, over and above the

amount required for her maintenance, for the benefit of his own children.

Actually, there is no intestacy as to any portion of the estate unless the word "remainder" is interpreted as the principal remaining after a life estate. But here, testator did not use the word in its technical sense. He first created a trust giving his trustees broad discretionary powers as the management of his real estate, and he then directed that the cost of maintenance and support of his wife should be paid from the income and/or principal of his estate, and after the death of his wife his entire estate was to be converted into cash and the remainder divided among his eight children. In speaking of his "entire estate," and directing that the "remainder" be divided, testator intended that all of his estate, principal and income, should be used for the maintenance and support of his wife and what remained after the support and maintenance of his wife had been paid should be divided among his children. The word "remainder" was used to designate that portion of his entire estate, principal and income, remaining after payment of the maintenance and support of his wife.

The matter of the validity of an accumulation of income in excess of the requirements of paragraph (c) of item 4 of decedent's will can only arise in the happening of the event whereupon the matter can be brought before the court for disposition.

Decedent's will appears fully of record in the office of register of wills of this county in Will Book 4-E, at page 546.

Because of the more than ordinary nature of this report, it appears advisable to quote the pertinent provisions of decedent's will as follows:

"*Item Two:* I give and bequeath to the Reception Committee of Ner Israel Rabbinical College of 4411 Carrison Boulevard, Baltimore, Maryland, my Re-

ligious Library. Any tax that may be assessable by reason of this gift shall be paid out of my residuary estate.

"*Item Three:* I direct my Executors hereinafter named to convert my entire estate into cash.

"*Item Four:* All the rest, residue and remainder of my estate, I give, devise and bequeath to the York Trust Company, of York, Pennsylvania, its successors and assigns, and David M. Piperberg. In the event my son, David Piperberg, cannot act by reason of illness, then it is my direction that my son, William Piperberg act as Co-Trustee with the York Trust Company. Said estate to be held in *trust, nevertheless,* for the following uses and purposes:

"(a) To invest the same in good and lawful securities as may be permitted under the Laws of the Commonwealth of Pennsylvania.

"(b) To operate any or all of my real estate during the existence of the hereinafter created life estate for the benefit of my wife and it is my desire that my Trustees named herein carry on the operation of my real estate in the same manner as I could do if living. However, if my Trustees deem it advisable to convert any of my real estate, then, in that event, I authorize, empower and direct my Trustees to convert any of my real estate, the same as I could do if living.

"(c) To pay from the income and/or principal of my estate, if necessary, the cost of the maintenance and support of my wife, Cevia Piperberg, so long as she remains a patient in the Harrisburg State Hospital.

"(d) Upon the death of my wife, Cevia Piperberg, I direct my Trustees to convert my entire estate into cash to divide the remainder thereof in the following manner:

"(1) A one-eighth (⅛) share thereof to my daughter, Blance Lyon, of Chambersburg, Pennsylvania, absolutely, her heirs or assigns.

"(2) To hold a one-eighth (⅛) share thereof, *in trust*, for my daughter, Sally Grossman, of York, Pennsylvania, and to pay the income therefrom to my said daughter, Sally Grossman, during her lifetime; provided, however, that should her husband, David Grossman, predecease her, then I direct my Trustees to pay to my daughter, Sally Grossman, the entire principal share held by my Trustees for my said daughter, Sally Grossman. In the event, however, that my daughter, Sally Grossman, should predecease her husband, David Grossman, then I direct my Trustees to hold this one-eighth (⅛) share of my estate, *in. trust*, until the death of the said David Grossman and to pay the income therefrom to my granddaughter, Thelma Grossman. And, upon the death of the said David Grossman, to pay the principal thereof to the said Thelma Grossman, her heirs or assigns, absolutely.

"(3) To hold a one-eighth (⅛) share thereof, *in trust*, and to pay the income therefrom to my daughter, Esther Pracker, and her husband, Samuel Pracker, of York, Pennsylvania, during their lives, or the life of the survivor of them; and upon the death of the survivor, to pay the principal and accumulated income to my grandchildren, in equal shares. It is my intention that this share of my estate shall be divided into as many shares as I have grandchildren surviving me; *provided*, however, that my granddaughter, Ealine Farb, the daughter of my deceased daughter, Betty Biederman, shall not receive any portion of this share because I have amply provided for her hereinafter. And, provided, however, that my granddaughter, Thelma Grossman, shall not receive any portion of this share of my estate should she receive the principal of the share of my estate held in trust for my daughter, Sally Grossman, in the event my daughter, Sally Grossman, should predecease her husband, David Grossman.

"(4) A one-eighth (⅛) share thereof to my daugh-

ter, Helen Freedman, of York, Pennsylvania, absolutely, her heirs or assigns.

"(5) A one-eighth (⅛) share thereof to my son, David M. Piperberg, of York, Pennsylvania, absolutely, his heirs or assigns.

"(6) A one-eighth (⅛) share thereof to my daughter Hannah P. Eskow, of York, Pennsylvania, absolutely, her heirs or assigns.

"(7) A one-eighth (⅛) share thereof to my son, William Piperberg, of York, Pennsylvania, absolutely, his heirs or assigns.

"(8) A one-eighth (⅛) share thereof to my granddaughter, Ealine Farb, of York, Pennsylvania, absolutely, her heirs or assigns.

"*Item Five:* I direct that my Executors hereinafter named shall pay all inheritance, estate, succession and legacy taxes to which my estate, or the transfer of any property hereunder may be subject and to charge such taxes as a part of the expense of administration."

In addition to his wife, decedent was also survived by all of the individuals who are named as remaindermen of the testamentary trust.

### *Schedule of Distribution*
#### PRINCIPAL

| | |
|---|---|
| Balance as hereinbefore determined . . . . . | $62,359.74 |
| Deduct value of distribution as made to the testamentary trustees by the accountants during the period of administration, as stated on page 11 of the account, and subject to the trust terms under item 4 of decedent's will . . . . . . | 45,025.00 |
| Leaving balance . . . . . . . . . . . . | $17,334.74 |

Which is awarded under item 4 of decedent's will,

To the York Trust Company and David M. Piperberg, trustees, in trust, to pay from the income and/or principal, if necessary, only for the cost of maintenance and support of decedent's wife, Cevia Piperberg, so long as she remains in the Harrisburg State Hospital ............................ $17,334.74

### INCOME

Balance as hereinbefore determined without allowance of credit in the sum of $10,000, which was distributed by the accountants during the period of administration to the Western National Bank of York, guardian of Cevia Piperberg, and for the reason to surcharge therefor as above set forth... $11,129.72

Which is awarded under item 4 of the will

To York Trust Company and David M. Piperberg, trustees, to pay therefrom only for the cost of maintenance and support of decedent's wife, Cevia Piperberg, so long as she remains a patient in the Harrisburg State Hospital ......................... $11,129.72

### *Decree*

And now, to wit, December 20, 1952, it is hereby ordered, adjudged and decreed that the first and final account of York Trust Company, David M. Piperberg and William Piperberg, executors of the estate of Jonas Piperberg, subject to the modifications thereof appearing in the foregoing report of audit, is confirmed; and it is further ordered that the distributions be paid by the executors in accordance with the schedule of distribution set forth in this report.

This decree is entered nisi and, in the absence of exceptions filed thereto within 10 days from the date thereof, the same shall become final, as of course.